Margaret AUSTIN, Admx., Estate of
Blaine Austin, Plaintiff,

v.

JOHNS–MANVILLE SALES CORPORATION et al., Defendants.

ARMSTRONG CORK, Defendant and
Third-Party Plaintiff,

v.

BATH IRON WORKS CORPORATION,
Third-Party Defendant.

Civ. No. 78–122 P.

United States District Court,
D. Maine.

Feb. 24, 1981.

---

Patrick N. McTeague, Charles Priest, John Reitman, Brunswick, Me., for plaintiff.

Harrison L. Richardson, Portland, Me., for third-party plaintiff.

Robert F. Hanson, Mark G. Lavoie, Portland, Me., for third-party defendant.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Chief Judge.

Plaintiff Margaret Austin, as administratrix of the estate of Blaine Austin, a former employee of Bath Iron Works Corporation (BIW), has filed this wrongful death action under the Maine Wrongful Death and Survival Statutes, 18 Me.Rev.Stat.Ann. § 2551 et seq.; 18 Me.Rev.Stat.Ann. § 2501. Defendants are a number of manufacturers of asbestos products who allegedly sold their products to BIW during the period from 1950 to 1976 while Blaine Austin was employed by BIW. The complaint alleges that Blaine Austin's disability and death resulted from pleural mesothelioma caused by his inhalation or ingestion of asbestos dusts and fibers contained in defendants' products. Plaintiff seeks recovery of compensatory and punitive damages on theories of negligence, breach of warranty, and strict liability. Jurisdiction is predicated on diversity of citizenship. 28 U.S.C. § 1332(a).

One of the defendants, Armstrong Cork, has commenced a third-party action against BIW seeking contribution and indemnity. Presently before the Court is a motion for summary judgment filed by BIW pursuant to Fed.R.Civ.P. 56, in support of which BIW asserts that the third-party action is barred by the exclusive liability provision of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(a).[1] The record consists of the pleadings, affidavits, answers to interrogatories and admissions on file. The issues have been fully briefed and argued.

For the reasons to be stated, the Court is persuaded that Armstrong Cork's third-party action is barred by Section 905(a) of LHWCA. BIW's motion for summary judgment is therefore granted.

I

The amended third-party complaint contains six counts. In Counts I, II, III and IV, Armstrong Cork alleges that BIW "willfully, wantonly, recklessly and negligently" failed to exercise due care in the discharge of its duty to protect the health and safety of its employees, including Blaine Austin, by failing to warn them of the dangers from exposure to asbestos products and by

---

1. It is undisputed that Blaine Austin was covered by LHWCA; that as of December 30, 1979, he had received $28,931.92 workers' compensation benefits under the Act; and that plaintiff continues to receive these benefits.

failing to protect them from those dangers. Count I seeks to have any judgment for compensatory damages recovered against Armstrong Cork by plaintiff reduced by the amount of BIW's LHWCA workers' compensation lien, or alternatively a judgment against BIW in the amount of that lien.[2] Count II requests judgment against BIW in the amount of any punitive damages recovered by plaintiff against Armstrong Cork. Count III seeks indemnity by BIW to the extent of any judgment recovered by plaintiff against Armstrong Cork. Count IV requests contribution from BIW for all or part of any judgment recovered by plaintiff against Armstrong Cork for loss of consortium or consequential or punitive damages.

In Count V of the amended third-party complaint, Armstrong Cork alleges that BIW fraudulently misrepresented and failed to disclose to its employees, including Blaine Austin, the hazards of exposure to asbestos, for the purpose of inducing them to work in the hazardous environment created by the presence of asbestos products. In Count VI, Armstrong Cork alleges that BIW, under the doctrine of *respondeat superior*, is vicariously responsible for the alleged negligent examination, diagnosis and treatment of its employees, including Blaine Austin, by its physicians and other medical personnel. Counts V and VI seek contribution or indemnification by BIW for any damages plaintiff may recover against Armstrong Cork.

## II

BIW's motion for summary judgment presents three general issues:

(1) Do the allegations of wilful, wanton and reckless misconduct on the part of BIW, if true, entitle Armstrong Cork to contribution or indemnity by BIW despite the exclusive liability provision of LHWCA?

(2) Do the allegations of fraud on the part of BIW, if true, entitle Armstrong Cork to contribution or indemnity by BIW despite the exclusive liability provision of LHWCA?

(3) Do the allegations of negligent examination, diagnosis and treatment by BIW's medical personnel, if true, entitle Armstrong Cork to contribution or indemnity by BIW despite the exclusive liability provision of LHWCA?

## III

Section 905(a) of LHWCA provides:

*§ 905. Exclusiveness of liability*

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . . [3]

There is no question that this section immunizes a compensation-paying employer from third-party claims for contribution, at least to the extent that the employer is immune from common law liability to its employees. *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.*, 342 U.S. 282, 285–86, 72 S.Ct. 277, 279–80, 96 L.Ed. 318 (1952). *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 261, 99 S.Ct. 2753, 2757, 61 L.Ed.2d 521 (1979); *Cooper Stevedoring Co., Inc. v. Fritz Kopke, Inc.*, 417 U.S. 106, 111–13, 94 S.Ct. 2174, 2177–78, 40 L.Ed.2d 694 (1974). Nor is the third party entitled to have any judgment recovered

---

**2.** Count I also requests an order directing BIW to pay directly to Armstrong Cork any future workers' compensation benefits to which plaintiff may become entitled.

**3.** Section 902 of LHWCA defines the term "injury" as used in the Act as follows:

(2) The term "injury" means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

against it by the employee reduced by the amount of the employer's workers' compensation lien under Section 933 of the Act. This so-called *pro tanto* theory of recovery was specifically rejected by the Supreme Court in *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 411–12, 74 S.Ct. 202, 206, 98 L.Ed. 143 (1953). *See also Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 725–26 & n.8 (2d Cir. 1978); *Newport Air Park, Inc. v. United States*, 419 F.2d 342, 345 & n.7 (1st Cir. 1969).

■ The parties agree that BIW may be found liable for contribution to Armstrong Cork only if under the allegations of the third-party complaint BIW could be found liable to its employee, Blaine Austin.[4]

■ A. *Wilful, Wanton and Reckless Misconduct (Counts I–IV).* Armstrong Cork's contention that the allegations in Counts I, II, III and IV of the amended third-party complaint of wilful, wanton and reckless misconduct on the part of BIW, if proven, could overcome BIW's immunity from suit by its employees by reason of the Section 905(a) exclusivity clause must be rejected. The coverage of LHWCA extends to "accidental injury or death," *see* note 3, *supra*, and the overwhelming weight of authority is that "the common-law liability of the employer cannot be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." 2A Larson, *Workmen's Compensa-*

tion Law § 68.13 at 13–5, and cases cited n.11 (1976). Nothing short of a specific intent to injure the employee falls outside the scope of the Act. *Id.* Absent such specific intent, an employee's right to compensation is his exclusive remedy against his employer for injuries covered by LHWCA and comparable state workmen's compensation acts. *Oman v. Johns-Manville Corp.*, 482 F.Supp. 1060 (E.D.Va.1980) (LHWCA); *Garibay v. Decker*, 331 F.Supp. 1093 (S.D.Tex.1971) (LHWCA). *See also Keating v. Shell Chemical Co.*, 610 F.2d 328, 332 (5th Cir. 1980) (Louisiana Workmen's Compensation Act); *Copeland v. Johns-Manville Products Corp.*, 492 F.Supp. 498, 500–01 (D.N.J.1980) (New Jersey Workmen's Compensation Act); *Great Western Sugar Co. v. District Court*, 610 P.2d 717, 720 (Mont.1980) (Montana Workmen's Compensation Act); *Kittell v. Vermont Weatherboard, Inc.*, 417 A.2d 926, 926–27 (Vt.1980) (Vermont Workmen's Compensation Act); *Petruska v. Johns-Manville*, 83 F.R.D. 39, 40 (E.D.Pa.1979) (New Jersey Workmen's Compensation Act). *But see Mandolidis v. Elkins Industries, Inc.*, 246 S.E.2d 907, 914 (W.Va.1978) (West Virginia Workmen's Compensation Act). Reckless, or wanton and wilful, misconduct, such as is alleged in the third-party complaint in the present case, differs from intentional wrongdoing: "[w]hile an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it." *See* Restatement (Second) of Torts § 500, Comment f (1965). In the words of the Restatement,

---

4. Armstrong Cork has cited no authority and has presented no argument in support of the claim for indemnity asserted in Count III of the amended third-party complaint. In any event, the indemnity claim is without merit. No express contract of indemnity is alleged. And while the Supreme Court has recognized an implied contract of indemnity based on the warranty of workmanlike performance implied in the contractual relationship between a stevedore and a shipowner, *Ryan Stevedoring Co., Inc. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the only relationship between Armstrong Cork and BIW alleged in the third-party complaint is that of manufacturer/seller and buyer of asbestos products. It has been consistently held that no

implied agreement by the buyer to indemnify the seller arises from a vendor/vendee relationship. *Zapico v. Bucyrus-Manville Co., supra; Oman v. Johns-Manville Corp.*, 482 F.Supp. 1060 (E.D.Va.1980). *See Kimball v. Lyons Machine Works, Inc.*, Civ. No. 75–119 S.D. (D.Me. July 22, 1976); *Kudelka v. American Hoist & Derrick Co.*, 541 F.2d 651 (7th Cir. 1976); *White v. Texas Eastern Transmission Corp.*, 512 F.2d 486 (5th Cir.), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1975); *Santisteven v. Dow Chemical Co.*, 506 F.2d 1216 (9th Cir. 1974); *Roberts v. American Chain & Cable Co.*, 259 A.2d 43 (Me.1969). *See also* 2A Larson, *Workmen's Compensation Law* § 76.44 at 14–402–05 (1976).

It is enough that [the actor] realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.

*Id. See also* Prosser, *Law of Torts* § 8 at 32 (4th ed. 1971). In the instant case, Armstrong Cork does not suggest that BIW deliberately intended to injure its employee, Blaine Austin.

■ B. *Fraud (Count V).* Armstrong Cork's attempt to circumvent the Section 905(a) exclusive liability provision by alleging in Count V of the amended third-party complaint that BIW fraudulently misrepresented to its employees the hazards of exposure to asbestos products must also fail. It is not charged that BIW specifically intended to injure its employees, and, as set forth above, in the absence of such a deliberate intent to inflict injury, an employer's liability under the LHWCA is limited to payment of workers' compensation benefits under the Act. In the words of Professor Larson,

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, wilfully failing to furnish a safe place to work, or even wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.

2A Larson, *supra* § 68.13 at 13–8.

The only case cited by Armstrong Cork in support of its contention that allegations of fraud can permit an employee to maintain a common-law action against his employer, despite an exclusive liability clause in a workmen's compensation act, is distinguishable, and in fact supports the position of BIW in the present action. In *Johns-Manville Products Corp. v. Contra Costa Superior Court*, 27 Cal.3d 465, 165 Cal.Rptr. 858, 612 P.2d 948 (1980), the court held that allegations an employer fraudulently concealed from its employee that he was suffering from an asbestos-related disease, thereby preventing him from receiving treatment for the disease, were sufficient to state a cause of action for aggravation of the disease, despite the exclusive liability clause in the California Workmen's Compensation Act. *Id.* at 955. The court specifically stated, however, that "if the complaint alleged only that plaintiff contracted the disease because defendant knew and concealed from him that his health was endangered by asbestos in the work environment, failed to supply adequate protective devices to avoid disease, and violated governmental regulations relating to dust levels at the plant, plaintiff's only remedy would be to prosecute his claim under the workers' compensation law." *Id.* at 954. In Count V of the instant complaint, Armstrong Cork alleges that BIW knew and misrepresented and concealed from its employees that their health was endangered by asbestos in the work environment. Count V contains no allegation that BIW fraudulently concealed from its employees that they were suffering from an asbestos-related disease, thereby preventing them from receiving treatment for the disease.

■ C. *Negligent Medical Treatment (Count VI).* The malpractice claim asserted by Armstrong Cork against BIW in Count VI of the amended third-party complaint is also barred by the Section 905(a) exclusive liability provision. Armstrong Cork contends that BIW may be liable for the alleged negligent examination, diagnosis and treatment of Blaine Austin by its medical personnel under the so-called "dual-capacity" doctrine. Professor Larson has defined the dual-capacity doctrine in the following terms: "An employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed upon him as employer." 2A Larson, *supra* § 72.80 at 14–112. Pro-

fessor Larson explains that "[t]he decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated from those flowing from the first, that of employer." *Id.* at 14–117. A "distinct separate legal *persona,* not just a separate theory of liability of the same legal person" is required. *Id.* at 167 (1980 Supp.).[5]

In urging the applicability of the dual-capacity doctrine in the present case, Armstrong Cork points out that at least three courts, applying state workmen's compensation acts, have held that an employer who negligently furnishes medical services to its employee may be held liable, in its capacity as treating physician, for aggravation of the employee's work-related injury. *Duprey v. Shane,* note 5 *supra; Guy v. Arthur H. Thomas Co.,* 55 Ohio St.2d 183, 378 N.E.2d 488 (1978); *McCormick v. Caterpillar Tractor Co.,* 82 Ill.App.3d 77, 37 Ill.Dec. 522, 402 N.E.2d 412 (1980). *But see Courtney v. BASF Wyandotte,* 385 So.2d 391 (La.Ct.App.1980). The federal courts in cases arising under LHWCA and the Federal Employees' Compensation Act (FECA),[6] 5 U.S.C. § 8101 *et seq.,* have consistently held, however, that the employer may not be held liable under the dual-capacity doctrine for the negligence of its medical personnel in furnishing to its employees the medical services the employer is required to furnish by Section 907(a) of the LHWCA and Section 8103(a) of FECA. *Lindsay v. George*

*Washington University,* 279 F.2d 819 (D.C. Cir.1960) (LHWCA); *Gold v. United States,* 387 F.2d 378 (3d Cir. 1967) (per curiam) (FECA); *Sanders v. United States,* 387 F.2d 142 (5th Cir. 1967) (per curiam) (FECA); *Balancio v. United States,* 267 F.2d 135 (2d Cir.) (FECA), *cert. denied,* 361 U.S. 875, 80 S.Ct. 139, 4 L.Ed.2d 114 (1959); *Mohr v. United States,* 184 F.Supp. 80 (N.D.Cal. 1960) (FECA); *Berry v. United States,* 157 F.Supp. 317 (D.Or.1957) (FECA). *See Scalia v. United States,* 475 F.Supp. 1040 (S.D. N.Y.1979) (FECA).

Section 907(a) of the LHWCA requires the employer to furnish such medical services as may be required for treatment of its employees' work-related injuries.[7] The medical care alleged to have been negligently provided to Blaine Austin in the present case was furnished by BIW pursuant to the obligation imposed upon it by Section 907(a) of the Act. Applying Professor Larson's dual-capacity test, BIW's obligation to furnish medical care flowed directly from its capacity as an employer. The dual-capacity doctrine is, therefore, inapplicable, and the claim asserted in Count VI is barred by the Section 905(a) exclusive liability clause.

### III

For the foregoing reasons, the motion of Bath Iron Works Corporation for summary judgment in its favor dismissing the amended third-party complaint of Armstrong Cork is GRANTED.[8]

IT IS SO ORDERED.

---

5. Professor Larson gives as examples of an employer acting in a dual capacity a shipowner employing stevedores (*Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963)), a landowner employing persons working on his property (*State v. Luckie,* 145 So.2d 239 (Fla. 1962)), and a chiropractor treating his own employee (*Duprey v. Shane,* 39 Cal.2d 781, 249 P.2d 8 (1952)). *Id.* § 72.80 at 14–112–14.

6. Since the provisions of FECA and LHWCA are essentially identical, cases decided under one act are commonly cited as authority cases arising under the other act. *See, e. g., Newport Air Park, Inc. v. United States, supra; Galimi v. Jetco, Inc.,* 514 F.2d 949 (2d Cir. 1975).

7. Section 907(a) provides as follows:

(a) The employer shall furnish such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of the injury or the process of recovery may require.

8. In Count I of the amended third-party complaint, Armstrong Cork also seeks to have any judgment recovered against it by plaintiff reduced by the amount of any compensation lien to which BIW may be entitled under the Maine Workers' Compensation Act, 39 Me.Rev.Stat. Ann. § 1 *et seq.,* or alternatively a judgment against BIW in the amount of any such lien. *See Sun Ship, Inc. v. Pennsylvania,* —— U.S. ——, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). The uncontroverted affidavit of Evelyn Des-

mond, supervisor of employee benefits at BIW, submitted by BIW in support of its motion for summary judgment, states that neither plaintiff nor Blaine Austin has made any claim for benefits, nor has BIW paid benefits, under the Maine Act on account of Blaine Austin's death. The question of what rights, if any, Armstrong Cork might have against BIW under the Maine Workers' Compensation Act is therefore not properly before the Court at this time.