## In re ALL MAINE ASBESTOS LITIGATION (BIW CASES).

United States District Court,
D. Maine.

July 5, 1984.

1564

See also 581 F.Supp. 963, 575 F.Supp. 1375.

G. William Higbee, Brunswick, Me., Thomas W. Henderson, Pittsburgh, Pa., William A. Mulvey, Jr., James G. Noucas, Jr., Mark F. Sullivan, Portsmouth, N.H., Lawrence C. Winger, Portland, Me., Melvin I. Friedman, Kreindler & Kreindler, New York City, Dan W. Thornhill, Kittery, Me., Ira A. Levy, P.C., Newark, N.J., Michael P.

Thornton, Boston, Mass., Donald G. Lowry, Lowry & Platt, Portland, Me., for plaintiffs.

Peter L. Murray, Thomas C. Newman, Portland, Me., for Amchem Products, Inc.

Harrison L. Richardson, Jeffrey Thaler, Thomas Getchell, Portland, Me., for Armstrong World.

M. Roberts Hunt, Glenn Robinson, Portland, Me., for Celotex Corp.

C. Alan Beagle, Portland, Me., for Combustion Engineering.

John R. Linnell, Auburn, Me., for Eagle-Picher Industries.

Thomas Schulten, Portland, Me., for Eastern Refractories.

U. Charles Remmel, Portland, Me., for Fibreboard Corp.

Jack H. Simmons, Lewiston, Me., for Forty-Eight Insulations.

Jotham D. Pierce, Jr., Daniel Emery, Portland, Me., for G.A.F. Corp.

Theodore H. Kurtz, South Paris, Me., for Congoleum.

Frederick C. Moore, Portland, Me., for Cummings Insulation and Claremont Co., Inc.

Arthur A. Cerullo, Portland, Me., for National Gypsum.

John J. Flaherty, Christopher D. Nyhan, Jonathan S. Piper, Portland, Me., for Nicolet, Inc.

Nicholas S. Nadzo, John Montgomery, Portland, Me., for Owens-Corning Fiberglas.

George F. Burns, Portland, Me., for Garlock, Inc.

Phillip D. Buckley, Bangor, Me., for Johns-Manville.

Thomas F. Monaghan, Kevin G. Libby, Deborah J. Ross, Portland, Me., for Keene Corp.

Charles H. Abbott, Steven Wright, Lewiston, Me., for Southern Textile Co.

Randall E. Smith, Saco, Me., for J.P. Stevens & Co.

Robert F. Hanson, Mark G. Lavoie, Portland, Me., for Bath Iron Works Corp.

Peter J. Rubin, Linda Monica, Portland, Me., for Owens-Illinois.

John A. Mitchell, James G. Goggin, Portland, Me., for Pittsburgh Corning.

Charles H. Abbott, Steven Wright, Lewiston, Me., for H.K. Porter Co.

Thomas R. McNaboe, Mark G. Furey, Portland, Me., for Raymark, Inc.

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., Harold J. Engel, Asst. Dir., S. Michael Scadron, Trial Atty. and Joseph B. Cox, Jr., Torts Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., for United States of America.

Peter W. Culley, Stephen C. Whiting, Portland, Me., for Scott Paper Company & Fels Company & Bendix.

Philip K. Hargesheimer, Roger J. O'Donnell, III, Platz & Thompson, Lewiston, Me., for Flintkote Co.

Robert E. Hirshon, Portland, Me., for Standard Asbestos Mfg.

## MEMORANDUM OF OPINION AND ORDER OF THE COURT

GIGNOUX, Senior District Judge.

Presently pending in this Court are approximately fifty actions which have been brought by present and former employees, and the representatives of deceased employees, of Bath Iron Works (BIW), a private shipyard in Bath, Maine, against various manufacturers and suppliers of asbestos-containing products. Plaintiffs seek recovery of compensatory and punitive damages for injuries the employees allegedly sustained from exposure to defendants' products during the course of their employment at BIW. The complaints assert causes of action based on negligence, strict liability, and breach of express and implied warranties. Jurisdiction is predicated upon diversity of citizenship. 28 U.S.C. § 1332(a); *Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 3 (1st Cir.), *cert. dismissed*, — U.S. —, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983).

In addition to denying any liability to the plaintiffs, certain defendants have filed

third-party actions against BIW seeking contribution and indemnity. With the Court's approval, a model third-party complaint has been filed in each plaintiff's action. The model third-party complaint contains six counts. In the first four counts, defendants allege that BIW "willfully, wantonly, recklessly and negligently" failed to exercise due care in the discharge of its duty to protect the health and safety of its employees by failing to warn them of the dangers from exposure to asbestos products and by failing to protect them from its dangers. In Count I, defendants seek *pro tanto* relief, asserting that they are entitled to have any judgment for compensatory damages recovered against them by a plaintiff reduced by the amount of BIW's worker's compensation lien, or, alternatively, that they are entitled to a judgment against BIW in the amount of that lien. Count II seeks contribution or indemnity by BIW for any punitive damages recovered by a plaintiff against defendants. Count III seeks indemnity by BIW to the extent of any judgment recovered by a plaintiff against defendants. Count IV seeks contribution by BIW for the amount of any judgment recovered by a plaintiff against defendants for loss of consortium or consequential or punitive damages. In Count V, defendants allege that BIW's medical care of its employees was negligent and seek contribution and indemnity by BIW on that basis. In Count VI, defendants seek contribution and indemnity by BIW as the owner *pro hac vice* of the vessels in its shipyard on which the employees worked.

This is the "third round" of an ongoing dispute between defendants and BIW concerning BIW's third-party liability for its employees' asbestos-related injuries. In the "first round," the Court granted BIW's motion for summary judgment and dismissed defendants' third-party claims as barred by the exclusive liability provision of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. 905(a). *Austin v. Johns-Manville Sales*

*Corp.*, 508 F.Supp. 313 (D.Me.1981).[1] The "second round" was precipitated by the subsequent holding of the United States Supreme Court in *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983), that the exclusive liability provision of the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8116(c), does not bar an indemnity action by an unrelated third party against the United States. Being persuaded that the analysis in *Austin* was inconsistent with the teaching of *Lockheed*, this Court granted a motion for reconsideration of its *Austin* ruling, vacated its prior order, and denied BIW's motion for summary judgment. *All Maine Asbestos Litigation (BIW Cases)*, Bench Ruling (D.Me. Mar. 9, 1984).[2] At the same time, the Court reserved ruling on BIW's newly-raised defense that it was protected from third-party liability by section 4 of the Maine Workers' Compensation Act (the Maine Act), 39 Me.Rev.Stat.Ann. § 4 (Supp.1983–84). It invited BIW to file an appropriate motion to bring this issue before the Court.

Presently before the Court is BIW's most recent motion for summary judgment, filed April 9, 1984, seeking dismissal of defendants' third-party claims against it as barred by section 4 of the Maine Act. The record before the Court consists of the pleadings and three affidavits filed by BIW in support of its motion. The issues have been comprehensively briefed and argued.

For the reasons to be stated, the Court has concluded that so much of BIW's motion as seeks dismissal of defendants' claims for contribution and indemnity must be granted, but that so much of the motion as seeks dismissal of the claims for *pro tanto* relief must be denied.

I.

The Court must begin its analysis with the Supreme Court's *Lockheed* opinion. In *Lockheed*, the Court held only that "FECA's exclusive liability provision, 5

---

1. It is undisputed that the BIW employees and deceased employees in these cases were covered by the LHWCA, 33 U.S.C. § 901 *et seq.*

2. A copy of the Court's March 9, 1984 Bench Ruling is attached as Appendix A.

U.S.C. § 8116(c), does not directly bar a third-party indemnity action against the United States." 460 U.S. 199, 103 S.Ct. at 1038. Relying on its review of the legislative history, it found that "'[t]here is no evidence whatever that Congress was concerned with the rights of unrelated third parties,'" and concluded that section 8116(c) "had been intended to govern only the relationship 'between the Government on the one hand and its employees and their representatives or dependents on the other.'" *Id.* at 195, 103 S.Ct. at 1036 (quoting *Weyerhauser S.S. Co. v. United States*, 372 U.S. 597, 601, 83 S.Ct. 926, 929, 10 L.Ed.2d 1 (1963)). Thus, contrary to defendants' contention, *Lockheed* did not affirmatively confer upon Lockheed a substantive indemnity claim against the United States. Indeed, the Court expressly stated that the validity of Lockheed's underlying claim for indemnity was not before it. *Id.* at 197 n. 8, 103 S.Ct. at 1037 n. 8. Rather, to determine that question, the Court made clear that recourse must be had to the "governing substantive law." *Id.* at 199, 103 S.Ct. at 1038.

■ In its March 9, 1984 ruling, this Court held that the *Lockheed* interpretation of FECA's exclusive liability provision applied with equal force to the "nearly identical" LHWCA provision, 33 U.S.C. § 905(a). *See Lockheed*, 460 U.S. at 195, 103 S.Ct. at 1037. This Court also concluded that "there is no evidence either in the language of the statute or in the congressional history that Congress addressed itself to, or was in any way concerned with, the rights of non-vessel owner third parties." *All Maine Asbestos Litigation (BIW Cases)*, Bench Ruling, *see infra* Appendix A at A–3. It follows that, as in *Lockheed*, it is to the governing substantive law that the Court must look to determine the availability to defendants of a

third-party claim for indemnity or contribution[3] against BIW. Since jurisdiction of these cases is based upon diversity of citizenship, *Austin v. Unarco Industries, Inc.*, 705 F.2d at 3, the governing substantive law is that which a Maine court would apply. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## II.

■ It is undisputed that BIW is a compensation-paying employer covered by the Maine Act, 39 Me.Rev.Stat.Ann. § 1 *et seq.* (1978 & Supp.1983–84). Section 4 of the Maine Act provides that employers who provide workers' compensation "shall be exempt from civil actions because of such injuries either at common law or under sections 141 to 148, under Title 14, sections 8101 to 8118 or under Title 18–A, section 2–804." 39 Me.Rev.Stat.Ann. § 4 (Supp. 1983–84).[4] The Supreme Judicial Court of Maine has held unequivocally that the employer's immunity granted by this section "extends to all non-contractual rights of contribution and indemnity." *McKellar v. Clark Equipment Co.*, 472 A.2d 411, 416 (Me.1984); *Roberts v. American Chain & Cable Co.*, 259 A.2d 43, 51 (Me.1969). Thus, section 4 of the Maine Act, as interpreted by the Maine Court, provides BIW with immunity from third-party claims for contribution or indemnity arising from work-related injuries to its employees.

## III.

Defendants advance two grounds in support of their argument that section 4 of the Maine Act cannot be applied in these cases to immunize BIW from liability on their third-party claims. First, they contend that the federally-enacted LHWCA has preempted section 4 of the Maine Act. Second,

**3.** Although in *Lockheed* the Supreme Court was concerned only with a third-party indemnity claim, it is clear that the holding is equally applicable to a third-party contribution claim. *See Johns-Manville Sales Corp. v. United States*, No. C–81–4561, slip op. at 10, (N.D.Cal. Jan. 6, 1984), *reprinted in Asbestos Litigation Reporter* 7,721, 7,724 (Jan. 20, 1984); *see also Prather v.*

*The Upjohn Co.*, 585 F.Supp. 112, 113 (N.D.Fla. 1984).

**4.** The statutes referred to relate to employers' liability in the absence of workers' compensation, actions under the Maine Tort Claims Act, and actions for wrongful death.

they argue that where plaintiffs have elected to receive compensation under the LHWCA, rather than under the Maine Act, section 4 of the Maine Act does not apply.[5] The Court finds no merit in either argument.

*A. Preemption*

■ In *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719, 722, 100 S.Ct. 2432, 2435, 2437, 65 L.Ed.2d 458 (1980), the Supreme Court clearly enunciated the three jurisdictional spheres within which marine-related injuries fall. At the seaward extreme, non-local maritime injuries fall under the LHWCA, and *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917), places a constitutional bar on States applying their compensation laws. *Sun Ship*, 447 U.S. at 719, 100 S.Ct. at 2435; *see, e.g., Anderson v. Alaska Packers Association*, 635 P.2d 1182, 1184–85 (Alaska 1981). At the other extreme, beyond the landward extension of the LHWCA, *see* 33 U.S.C. § 903(a), state compensation laws alone control. *Sun Ship*, 447 U.S. at 719, 100 S.Ct. at 2435. In the "twilight zone" between the *Jensen* line and the inland limit of the landward extension of the LHWCA "maritime but local" injuries can be compensated under either state or federal law, *id.*, and "federal jurisdiction ... coexist[s] with state compensation laws." *Id.* at 722, 100 S.Ct. at 2437; *see Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 128–29, 82 S.Ct. 1196, 1204, 8 L.Ed.2d 368 (1962); *Davis v. Department of Labor*, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246 (1942). Concurrent federal and state jurisdiction in the "twilight zone" is now too well established to be disputed. *Director v. Perini North River Associates*, 459 U.S. 297, 320–23, 103 S.Ct. 634, 649–50, 74 L.Ed.2d 465 (1983); *Landry v. Carlson Mooring Service*, 643 F.2d 1080, 1087–88 (5th Cir.), *cert. denied*, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981); *Newport News Shipbuilding & Drydock Co. v. Director*, 583 F.2d 1273, 1276–78 (4th Cir.1978), *cert. denied*, 440 U.S. 915, 99 S.Ct. 1232, 59 L.Ed.2d 465 (1979);

*Thompson v. Teledyne Movable Offshore, Inc.*, 419 So.2d 822, 826 (La.Sup.Ct.1982); *American Original Foods, Inc. v. Ford*, 272 S.E.2d 187, 188–90 (Va.Sup.Ct.1980); *Ward v. State Workmen's Compensation Commissioner*, 301 S.E.2d 592, 594 (W.Va. Sup.Ct.App.1983); *see Murray v. City of Augusta*, 394 A.2d 1171, 1173 (Me.1978); 4 A. Larson, *The Law of Workmen's Compensation* §§ 89.70–89.73 (1983).

■■ Within the twilight zone of concurrent jurisdiction, the LHWCA "supplements, rather than supplants, state compensation law." *Sun Ship*, 447 U.S. at 720, 100 S.Ct. at 2436; *see* 1A E. Jhirad, *Benedict on Admiralty* § 23a at 2–18.2–2–19 (7th ed. 1983). The LHWCA would only preempt a *conflicting* provision of a state compensation act. *See Sun Ship*, 447 U.S. at 724 n. 6, 100 S.Ct. at 2438 n. 6; *Murphy v. Woods Hole, Martha's Vineyard & Nantucket S.S. Authority*, 545 F.2d 235, 241 (1st Cir.1976); *see also Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 341, 93 S.Ct. 1590, 1600, 36 L.Ed.2d 280 (1973). Preemption will not be presumed absent a clear conflict between federal and state legislation "in a field which the states have traditionally occupied." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947); *see Askew v. American Waterways Operators, Inc.*, 411 U.S. at 341, 93 S.Ct. at 1600; *Murray v. City of Augusta*, 394 A.2d at 1173; 4 A. Larson, *The Law of Workmen's Compensation* § 89.71 at 16–286.45 (1983).

■ Defendants can point to no presently relevant provision of the LHWCA which conflicts with Section 4 of the Maine Act. They suggest that section 905(a) may create such a conflict. But, as previously observed, *see ante* at 5, Congress, in enacting section 905(a) of the LHWCA, left undisturbed existing law regarding the rights of unrelated third parties against covered employers. Moreover, since the outcome of the third-party litigation does not directly affect any award to the employee, the Court cannot see any conflict between the

---

**5.** The affidavits submitted by BIW in support of its motion disclose that the vast majority of

plaintiffs have chosen to receive compensation under the LHWCA.

immunity provision of the Maine Act and Congress's policy objective of providing adequate benefits to maritime workers. *See Sun Ship,* 447 U.S. at 723, 100 S.Ct. at 2438.[6]

### B. Election

■ It is undisputed that, with only a few exceptions, plaintiffs have chosen to receive workers' compensation benefits under the LHWCA, rather than under the Maine Act. Defendants argue that plaintiffs' acceptance of LHWCA benefits constitutes an election of the remedy under federal law, precluding the application of state law in these cases. They cite Professor Larson's discussion of conflicts between state workers' compensation acts. *See* 4 A. Larson, *The Law of Workmen's Compensation* § 88. The short answer to this contention is that "[e]lection of remedies involves a choice between *inconsistent* remedies," whereas "[s]tate and Longshore benefits are not inconsistent but complementary." *Id.* § 89.74 at 16–286.50–.51 (emphasis in original). The courts have thus overwhelmingly rejected the election of remedies argument as between the LHWCA and a state workers' compensation act. *Calbeck v. Travelers Insurance Co.,* 370 U.S. at 131–32, 82 S.Ct. at 1205–06; *Simpson v. Director,* 681 F.2d 81, 91 (1st Cir.1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983); *Landry v. Carlson Mooring Service,* 643 F.2d at 1087–88; *Newport News Shipbuilding &*

*Drydock Co. v. Director,* 583 F.2d at 1276–77; *Murray v. City of Augusta,* 394 A.2d at 1173. *But see Poche v. Avondale, Inc.,* 339 So.2d 1212, 1221 (La.1976).[7] In sum, as Professor Larson has observed, "the doctrine of election of remedies is completely out of place as between state and Longshore remedies." 4 A. Larson, *The Law of Workmen's Compensation* § 89.74 at 16–286.50.

### IV.

There remains for consideration only the prayer for *pro tanto* relief in Count I of defendants' third-party complaint. The question of whether section 4 of the Maine Act immunizes a compensation-paying employer from *pro tanto* claims presents a question of Maine law on which the Supreme Judicial Court of Maine has not spoken. Moreover, the justices of the Maine Superior Court, courts in other jurisdictions construing similar compensation statutes, and the commentators are split on this issue. *Compare Burnell v. West Oxford Agricultural Society,* Docket No. CV 81–151 (Oxford, June 28, 1983) (Bradford, J.) (permitting *pro tanto* recovery); *Associated Construction & Engineering Co. v. Workers' Compensation Appeals Board,* 22 Cal.3d 829, 150 Cal.Rptr. 888, 587 P.2d 684 (1978) (Mosk, J.) (permitting *pro tanto* recovery in California); *Witt v. Jackson,* 57 Cal.2d 57, 17 Cal.Rptr. 369, 366 P.2d 641 (1961) (Traynor, J.) (permitting *pro tanto*

---

**6.** The only provision of the LHWCA arguably in conflict with section 4 of the Maine Act is section 905(b), 33 U.S.C. § 905(b), which permits a covered employee to recover damages for injuries caused by the negligence of a vessel owned by his employer. *See Jones & Laughlin Steel Corp. v. Pfeiffer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983); In re *All Maine Asbestos Litigation,* 581 F.Supp. 963, 975–77 (D.Me.1984). Plaintiffs in these actions, however, can have no such claim against BIW because, as the Court has previously held, BIW was neither the owner nor the owner *pro hac vice, see* 33 U.S.C. § 902(21), of the vessels upon which the employees worked. *See Bernier v. Johns-Manville Sales Corp.,* 547 F.Supp. 389 (D.Me.1982).

**7.** Professor Larson suggests that *Poche* was decided as it was because Louisiana is a civil law state and the election doctrine has its roots in

Roman Law. *See* 4 A. Larson, *The Law of Workmen's Compensation* § 89.74 at 16–286.51.

Defendants argue that the Supreme Court recognized an election of remedies in *Hahn v. Ross Island Sand & Gravel Co.,* 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292 (1959) (per curiam). *Hahn* was based upon a clause in section 903(a) of the LHWCA which provided that the LHWCA did not apply "if recovery ... through workmen's compensation proceedings may ... validly be provided by State law." *See Hahn,* 358 U.S. at 272, 79 S.Ct. at 266. The meaning of that language was substantially narrowed as the Supreme Court developed the doctrine of concurrent jurisdiction. *See, e.g., Calbeck v. Travelers Ins. Co.,* 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). In any event, Congress eliminated the language upon which *Hahn* was based when it amended the LHWCA in 1972. Pub.L. 92–576, § 2(c), 86 Stat. 1251 (Oct. 27, 1972).

recovery in California); Note, *Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes,* 96 Harv.L.Rev. 1641, 1660–61 (1983) (arguing for *pro tanto* relief); Note, *New Policies Bearing on the Negligent Employer's Immunity from Loss-Sharing,* 29 Me.L.Rev. 243 (1978) (arguing for *pro tanto* relief), *with Wacome v. Blue Rock Industries,* Docket No. CV–82–270 (Kennebec, Mar. 16, 1983) (McCarthy, J.) (denying *pro tanto* recovery); *Shorey v. Boulter & Son, Inc.,* Docket No. 77–475 (Penobscot, May 3, 1979) (Brown, J.) (denying *pro tanto* recovery); *Schweizer v. Elox Division of Colt Industries,* 70 N.J. 280, 359 A.2d 857 (1976) (holding courts in New Jersey do not have the authority to grant *pro tanto* recovery); 2A A. Larson, *The Law of Workmen's Compensation* §§ 76.20 *et seq.* (1982) (arguing against *pro tanto* relief); *see also Kimball v. Lyons Machine Works,* Civ. No. 75–119 SD (D.Me. July 22, 1976) (allowing a *pro tanto* claim to survive a motion to dismiss).

■ The issue presented here raises a question of Maine law as to which there is no clear controlling precedent in the decisions of the Supreme Judicial Court. In these circumstances, especially in view of the division among the Maine Superior Court justices and authorities elsewhere, the prudent course for this Court to follow is to deny BIW's motion for summary judgment insofar as it seeks dismissal of the claims for *pro tanto* relief, and, upon its own motion or upon request of a party at the close of trial, to consider certifying the question to the Supreme Judicial Court of Maine pursuant to Me.R.Civ.P. 76B. Such certification should be made only on a complete record. *See Hiram Ricker & Sons v. Students International Meditation Society,* 342 A.2d 262 (Me.1975); *White v. Edgar,* 320 A.2d 668 (Me.1974); *In re Richards,* 223 A.2d 827 (Me.1966).

### V.

In accordance with the foregoing, it is ORDERED as follows:

(1) So much of BIW's motion for summary judgment as seeks dismissal of the claims for contribution and indemnity in defendants' Model Third-Party Complaint is GRANTED;

(2) So much of BIW's motion for summary judgment as seeks dismissal of the claims for *pro tanto* relief in defendants' Model Third-Party Complaint is DENIED.

### APPENDIX A

*All Maine Asbestos Litigation*
*(BIW Cases)*

Bench Ruling (D.Me. March 9, 1984)

\*    \*    \*    \*    \*    \*

The motion before the Court is the motion filed by Raymark Industries, Incorporated, on September 13, 1983, requesting that this Court reconsider its decision and order in the case of *Austin v. Johns-Manville Sales Corporation,* 508 F.Supp. 313 (D.Me.1981). In that case this Court ruled, on the basis of then authoritative Supreme Court cases, that the third-party claims for contribution and/or indemnity asserted by the defendant Armstrong Cork against Bath Iron Works were barred by the exclusive liability provision of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(a). The Court therefore granted BIW's motion for a summary judgment dismissing the amended third-party complaint of Armstrong Cork. Subsequently, the Court entered similar orders, without further argument, in three other asbestos actions, the so-called *Bernier, Moore* and *Jones* cases, Civil Nos. 78–98, 79–55 and 81–00145 (Consolidated) and Civil No. 79–73, granting BIW's motions for summary judgment dismissing third-party complaints filed against BIW by defendant Raybestos-Manhattan (now Raymark Industries, Incorporated). The Raymark motion presently before the Court seeks reconsideration of all these and any similar rulings by this Court.

The basis of the motion for reconsideration is the subsequent opinion of the United States Supreme Court in *Lockheed Aircraft Corp. v. United States,* decided February 23, 1983. In *Lockheed,* the Supreme Court held that the exclusive liability provi-

sion of the Federal Employees' Compensation Act, 5 U.S.C. § 8116(c), did not bar a third-party indemnity action by an unrelated third party against the United States. Having thoroughly analyzed the Supreme Court's opinion in *Lockheed,* the briefs submitted by counsel on the present motion, and the earlier Supreme Court cases referred to in those briefs, this Court is persuaded that the rationale of the Supreme Court in *Lockheed* compels the conclusion that this Court's ruling in *Austin* cannot survive.

The language of the exclusivity provision of the LHWCA, Section 905(a), is in all material respects identical to the language of the exclusive liability provision of the FECA, § 8116(c). In *Lockheed,* the Supreme Court construed this language as not barring third-party indemnity actions against the United States, the employer covered by the FECA, by unrelated third parties. The basis of the Supreme Court's decision in *Lockheed* was both the language of § 8116(c) and the legislative history of the FECA. As to the latter, the Supreme Court concluded that there is no evidence that Congress was concerned with the rights of unrelated third parties. In this connection, the Court pointed out that § 8116(c) was intended to govern only the rights of employees, their relatives, and persons claiming through or on behalf of them, these being the only parties who benefit from the "quid pro quo" compromise of the FECA.

Applying the Supreme Court's analysis in *Lockheed* to § 905(a) of the LHWCA, the language of § 905(a) is in all material respects identical to the language of § 8116(c), and the Supreme Court's construction of that language in FECA would appear to be equally applicable to the corresponding LHWCA language. Moreover, a review of the legislative history of the LHWCA, including the 1972 amendments, persuades this Court that it is equally unpersuasive to establish that Congress was concerned with the rights of unrelated non-vessel owner third parties. Insofar as unrelated non-vessel owner third parties are concerned, the 1972 amendments involved no "quid pro quo" compromise similar to

that which benefited vessel owners. In short, there is no evidence either in the language of the statute or in the congressional history that Congress addressed itself to, or was in any way concerned with, the rights of non-vessel owner third parties.

The Court has concluded that *Lockheed's* analysis of the exclusivity provision of the FECA is equally applicable to the exclusivity provision of the LHWCA. It follows that the ruling of this Court in *Austin* .is inconsistent with *Lockheed* and cannot stand.

Raymark's motion for reconsideration of the *Austin* ruling is granted. The order granting BIW's motion for summary judgment dismissing the third party complaint of Armstrong Cork in that case, and the further orders of this Court granting BIW's motions for summary judgment dismissing the third party complaints of Raybestos-Manhattan in three other cases, are vacated. The Court will enter an order denying BIW's motions for summary judgment.

The denial of these motions is without prejudice to the right of BIW to file an appropriate motion based on its newly-raised defense that the substantive law which this Court must apply, quite apart from Section 905(a), bars the third party claims for contribution and indemnity asserted against BIW in these cases.