Herbert **SHARP**

v.

Tom **ELKINS**, et al.

Civ. A. No. 85–1026.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Sept. 17, 1985.

William Henry Sanders, Jena, La., for plaintiff.

Joseph L. Lemoine, Jr., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for Marathon Oil Co.

Ronald J. Fiorenza, Provosty, Sadler & deLaunay, Alexandria, La., for John Wright Smith.

## RULING

LITTLE, District Judge.

This matter is now before the Court by way of plaintiff's motion to remand and defendant John Wright Smith's motion for summary judgment. After due consideration the Court finds in favor of defendant Smith and against plaintiff.

## BACKGROUND

According to his state court petition, plaintiff alleges that: on 31 August 1984 he was employed by Dual Offshore Drilling Company (Dual) aboard RIG 39 in the Gulf of Mexico when he sustained a disabling hand injury; he reported this injury to Tom Elkins (Elkins), an employee of the platform owner, Marathon Oil Company (Marathon), and requested a helicopter so that he could receive immediate treatment ashore; the request for a helicopter was denied; he then went to John Wright Smith (Smith), an employee of Dual and a co-employee of plaintiff, and made the same request; this request was also denied; fifteen hours later plaintiff received competent treatment; at the time of treatment his hand was swollen, infected and permanently injured.

Plaintiff originally filed this lawsuit in the 28th Judicial District Court, Parish of LaSalle, State of Louisiana, on 15 March 1985. He alleged causes of action against Elkins and Smith under La.C.C. art. 2315 [1] and against Marathon under "the strict lia-

---

1. La.C.C. art. 2315 states in pertinent part:

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

bility jurisprudence of the State of Louisiana".[2]

■ On 12 April 1985, Marathon petitioned for removal claiming that Smith, the only non-diverse party, was fraudulently joined by plaintiff. It is Marathon's position that no cause of action exists against Smith since he was a fellow employee of the plaintiff and as such is entitled to immunity under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA or the Act), 33 U.S.C. §§ 901 *et seq.*[3]

Plaintiff filed his motion for remand on 5 August 1985. Smith filed his motion for summary judgment based on LHWCA immunity three days later.

## I.

■ It is well settled that the right to remove a civil action upon the basis of diversity jurisdiction cannot be defeated by the improper joinder of a resident defendant having no real connection with the controversy. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921). It now appears, however, that this doctrine must be applied narrowly in recognition of the express congressional intent to restrict the jurisdiction of federal courts on removal. *See, American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 10, 71 S.Ct.

534, 538, 95 L.Ed. 702 (1951); *Powers v. South Central United Food & Commercial Workers Union*, 719 F.2d 760, 762 (5th Cir.1983).

■ The burden of proving a fraudulent joinder is a heavy one. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983); *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir.1981). In order to establish that an in-state defendant has been fraudulently joined, "(t)he removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court, or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts". *Green*, 707 F.2d at 205; *B. Inc.*, 663 F.2d at 549.

Because the residence of each party has not been disputed, the plaintiff's pleadings of jurisdictional facts are obviously not fraudulent. *Green, supra.* The Court's sole concern, therefore, "is whether there is a possibility that plaintiff has set forth a valid cause of action" against Smith. *Id.*[4]

Reading plaintiff's allegations in the light most favorable to him, the Court finds he has potentially stated a cause of action against Smith based on intentional tort.[5] The Court's inquiry thus becomes a more narrow one—Is there any possibility that a

---

**2.** Strict liability in this instance is based upon La.C.C. arts. 2317 and 2322:

"Article 2317. Acts of others and of things in custody. We are responsible, not only for the damages occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modification."

"Article 2322. Damage caused by ruin of building. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."

*See, Dobbs v. Gulf Oil Co.*, 759 F.2d 1213 (5th Cir.1985).

**3.** The LHWCA applies to workmen assigned to rigs on the outer continental shelf through the

Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1333(c). There is no need for an employee to whom OCSLA applies to satisfy independently the two-fold situs and status test for LHWCA coverage. *Stansbury v. Sikorski Aircraft*, 681 F.2d 948 (5th Cir.1982).

**4.** *Green* also mandates that a district court should not conduct a full-scale evidentiary hearing on questions of fact. 707 F.2d at 204. Being ever mindful of this mandate, the Court has taken its facts from the plaintiff's pleadings and resolved all contested issues of substantive fact in his favor.

**5.** Sharp contends that Smith, by denying the request for a helicopter, intentionally sought to imprison him on the rig and inflict mental and physical injury.

court could find an intentional tort exception to the immunity afforded a fellow employee under the LHWCA?

## II.

■ In 1927 Congress passed the LHWCA granting to longshoremen the right to receive workmen's compensation benefits from their employers. The purpose of the Act was to give longshoremen a national workmen's compensation law to fill the void created by decisions of the Supreme Court that longshoremen could not come within state compensation laws [6] nor be placed therein by Act of Congress.[7] *Parker v. Motor Boat Sales, Inc.,* 314 U.S. 244, 249–50, 62 S.Ct. 221, 224–25, 86 L.Ed. 184, 191 (1941). Accordingly, the dominant intent of Congress in enacting the LHWCA was to help longshoremen. *Bludworth Shipyard, Inc. v. Lira,* 700 F.2d 1046, 1051 (5th Cir.1983). Thus, like all remedial legislation, the Act "must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results". *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 268, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320, 335 (1977), *quoting, Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953).

Section 33(i) of the LHWCA, 33 U.S.C. § 933(i) provides in pertinent part:

"(i) Right to compensation as exclusive remedy. The right to compensation or benefits under this Act shall be the exclusive remedy to an employee when he is injured ... by the negligence or wrong of any other person or persons in the same employ: Provided, That this provision shall not affect the liability of any person other than an officer or employee of the employer." [8]

Applying this section, the Court held in *Keller v. Dravo Corp.,* 441 F.2d 1239, 1242 (5th Cir.1971), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972), that § 933(i) prohibited any claim against the executive officers of the employer. Earlier, at least one district court had held that fellow workers were immune from suit under § 933(i). *Hughes v. Chitty,* 283 F.Supp. 734, 737 (E.D.La.1968), *aff'd.,* 415 F.2d 1150 (5th Cir.1969). Later, another district court followed these decisions and granted motions to dismiss an injured employee's claims against his fellow workers. *Fitzgerald v. Compania Naviera La Molinera,* 394 F.Supp. 402, 407 (E.D.La.1974). Although these cases dealt with negligent injuries inflicted by fellow employees [9], it would seem logical to apply their holdings to the present case where an intentional tort is alleged. Support for this logic can be found in the inclusion of the word "wrong" in the test of § 933(i). "Wrong" has been defined as "(a) violation of the legal rights of another; an invasion of right to the damage of the parties who suffer it, especially a tort." *Black's Law Dictionary,* 1788 (rev. 4th ed. 1968). This broad definition clearly encompasses intentional or willful torts.

The above analysis notwithstanding, plaintiff argues that the basic purpose of the LHWCA is to improve the lot of the workers. He submits that if the employer and its employees are protected from the consequences of their willful acts then the Act is "coated with paint" in stating that it is for the workers when it really harbors the employer from actions tantamount to criminal assault, battery and, in the extreme case, murder.

Some authority for plaintiff's position can be found in the Congressional comments under § 933(i):

fellow employees by § 933(i) was left unimpaired. *Fitzgerald v. Compania Naviera La Molinera,* 394 F.Supp. 402, 406 (E.D.La.1974).

**9.** All three cases essentially involved an alleged negligent failure to provide a safe workplace.

**6.** *Southern Pac. Co. v. Jensen,* 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

**7.** *Washington v. W.C. Dawson & Co.,* 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924); *Knickerbocker Ice Co. v. Stewart,* 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1919).

**8.** Although the LHWCA was substantially amended in 1972, the protection provided to

"The other major provision of the bill relates to immunization of fellow employees against damage suits. The rationale of this change in the law is that when an employee goes to work in a hazardous industry he encounters two risks. First, the risks inherent in the hazardous work, and second, the risk he might *negligently* hurt someone else and thereby incur a large common-law damage liability. While it is true that this provision limits an employee's rights, it would at the same time expand them by immunizing him against suits where he *negligently* injures a fellow worker."

1959 U.S.Code Cong. & Ad.News 2135–2136. (Emphasis supplied.) Presumably, Congress could have included language covering intentional torts if it so desired. An argument can be made that the absence of any specific reference to intentional torts means that only torts based on negligence were meant to be covered by § 933(i) immunity.

It is also worthy of note that some courts have recently carved out an intentional tort exception to the immunity afforded an employer under 33 U.S.C. § 905(a).[10] Section 905(a) provides that an employee's compensation remedy is the exclusive remedy against his employer "in place of *all* other liability". (Emphasis supplied.) Yet, in spite of this broad language, it has been held that where a specific intent exists on the part of the employer to injure an employee, a common-law tort action may be maintained against the employer. *See,*

*Houston v. Bechtel Associates Professional Corp.*, 522 F.Supp. 1094, 1096 (D.D.C. 1981); *Austin v. Johns-Manville Sales Corp.*, 508 F.Supp. 313, 316 (D.Maine 1981).[11] Certainly, if an exception for intentional torts can be found under § 905(a) with its seemingly all-inclusive language, then it seems reasonable that the same exception can be found under § 933(i) and its language. However, what is reasonable and what is proper under the law are sometimes two very different things.

Under § 902(2) of the Act the term "injury" is defined as follows:

"The term 'injury' means accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, *and includes an injury caused by the willful act of a third person directed against an employee because of his employment."* (Emphasis supplied.)

Clearly this section exhibits a Congressional intent to include within the remedies of the LHWCA torts caused by the intentional acts of third persons. As to who may be a third "person" under the Act, § 902 provides as follows: The term "person" is defined as an "individual, partnership, corporation, or association", 33 U.S.C. § 902(1); the term "employer" is not expressly included within the definition of the term "person", but given its own separate definition;[12] and the term "employee" is defined as "any *person*

---

**10.** Section 905(a) states in pertinent part:
"The liability of an employer in section 4 (33 U.S.C. § 904) shall be exclusive and in place of all other liability of such employer to employee ..."
§ 904 states in pertinent part:
"(a) Every employer shall be liable for and shall secure the payment to his employees of the compensation payable (under the Act)."
"(b) Compensation shall be payable irrespective of fault as a cause for the injury."

**11.** As was stated in *Houston* at p. 1096:
"Nothing short of a specific intent to injure the employee falls outside the scope of § 905(a)."
"Neither knowingly permitting a hazardous work condition to exist, ..., nor willfully fail-

ing to furnish a safe place to work, ..., nor even willfully violating a safety statute, ..., constitutes the requisite intent."

**12.** 33 U.S.C. § 902(4) states:
"The term 'employer' means an employer any of whose employees are employed in the maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel." Obviously the employer cannot be a "third person" since it is a direct party to the employer-injured employee compensation scheme.

engaged in maritime employment, including any longshoremen or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, ship-builder and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any vessel under eighteen tons net", 33 U.S.C. § 902(3). (Emphasis supplied.) Thus, a fellow employee could be deemed a third "person" under § 902(2) and an employer could not. Accordingly, if an employer commits a willful act against its employee, then the injury to the employee apparently has not been caused by a "third person", is not accidental and, thus, not compensable under the Act. Under this rationale, an intentional tort exception, such as the one found in *Houston* and *Austin, supra*, is appropriate, otherwise an injured employee would be left without a remedy for his injury. He would have no common-law remedy because of the exclusivity provision of § 905(a) and no workmen's compensation remedy because the "injury" would not come under any existing definition.

This is not true in the case of a fellow employee. In *Penker Const. Co. v. Cardillo*, 118 F.2d 14 (D.C.Cir.1941), an employee of Penker Construction Company, one Wilder, was killed on the job at the hands of a fellow employee, one Whitfield. The Court found that Wilder had obtained his job through Whitfield and then refused to pay Whitfield a commission of $10 as a finders fee. This so enraged Whitfield that he struck the blow which killed Wilder. It was held that these facts not only supported, but required, the award of compensation under § 902(2). 118 F.2d at 15. The court stated:

"An assault by a stranger, and a fortiori by a fellow employee, clearly arises out of the employment where, as here, the

employment provides the motive for the assault. Wilder was killed because he had employment for which he refused to pay a fee. That he was under no obligation to pay is immaterial. The case is like *Maryland Casualty Company v. Cardillo*, 69 App.D.C. 199, 99 F.2d 432. There the employment led to a criticism which led to an attack; here the employment led to a demand and refusal which led to an attack.

The finding that 'the employment * * * was responsible for the assault' is equivalent to a finding that the injury was 'caused by the willful act of a third person directed against an employee because of his employment'. The statute makes such an injury compensable."

*Id.*[13]

In the present case, Sharp claims he was damaged because of Smith's failure to obtain helicopter transportation for him, which was needed because of an injury which occurred on the job. Like the *Penker* case, Sharp's employment led to a demand and refusal which led to an alleged injury. Sharp's injury, if proven, is compensable under the Act.

This leads us back to the immunity a fellow employee enjoys under § 933(i). Since an injury caused by the intentional tort of a fellow worker is compensable under the Act, no disservice is done to the injured employee by upholding § 933(i) immunity. He is certain to receive compensation regardless of fault and is saved the time, expense and perils of litigation. Also, he receives the benefits of § 933(i) immunity when and if *he* injures a fellow employee. Further, because that immunity exists, the employer cannot be put in the untenable situation of suing its own employee when and if the injured party's right

---

**13.** See also, *So. Pac. Co. v. Sheppeard*, 112 F.2d 147 (5th Cir.1940); *General Accident, Fire & Life Assur. Corp. v. Crowell*, 76 F.2d 341 (5th Cir. 1935); *Hartford Accident & Indemnity Co. v. Cardillo*, 112 F.2d 11 (D.C.Cir.1940); *Maryland Casualty Co. v. Cardillo*, 107 F.2d 959 (D.C.Cir. 1939). *But see, Figuero v. National Steel Shipbuilding Co.*, 8 B.R.B.S. 853 (1978); *Ackerman v. Cardillo*, 140 F.2d 348 (D.C.Cir.1944); *Fazio v. Cardillo*, 109 F.2d 835 (D.C.Cir.1940).

to recover damages is automatically assigned to it under § 933(b).[14]

In *Nations v. Morris,* a panel of the Fifth Circuit (per Brown, (then) C.J.) found that § 933(i) "completely obliterates the rights at common, civil or maritime law" against a fellow employee. 483 F.2d 577, 587 (5th Cir.1973). A determination in this case that a common-law cause of action against a fellow employee for intentional tort still exists under the Act, would prostitute that finding.

▮ Therefore, without a Fifth Circuit mandate or clear Congressional command otherwise, the Court will not construe the LHWCA "in any way that makes some of its provisions mere surplusage."[15] The Court holds that the immunity afforded a fellow employee under 33 U.S.C. § 933(i) is complete and without exception in a civil case. Defendant Smith's motion for summary judgment is GRANTED and he will be dismissed from the case by an appropriate order. Having granted Smith's motion and found no intentional tort exception under § 933(i), it is axiomatic that Sharp cannot state a cause of action against Smith and that remand is not warranted.[16] Plaintiff's motion is DENIED.[17]

---

**14.** 33 U.S.C. § 933(b) states:
"Acceptance of compensation acting as assignment. Acceptance of compensation under an award in a compensation order filed by the deputy commissioner, an administrative law judge, or the Board shall operate as an assignment to the employer of all rights of the person entitled to compensation to recover damages against such third person unless such person shall commence an action against such third person within six months after such acceptance. If the employer fails to commence an action against such third person within ninety days after the cause of action is assigned under this section, the right to bring such action shall revert to the person entitled to compensation. For the purpose of this subsection, the term 'award' with respect to a compensation order means a formal order issued by the deputy commissioner, an administrative law judge, or Board."

**15.** *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985).

**16.** Since Smith is immune from suit under the LHWCA, the absence of diversity and his failure to join in the removal petition do not prevent removal. *Hale v. Tata Corp.,* 502 F.Supp. 502, 505 (S.D.Tex.1980).

**17.** By arriving at the above holdings, the Court is merely adhering to express congressional intent. As was stated in connection with the amendment to 33 U.S.C. § 933(i) in 1959:
"It simply means that rights and liabilities arising within the 'employee family' will be settled within the framework of the Longshoremen's and Harbor Workers' Compensation Act."
1959 U.S.Code Cong. & Ad.News 2136.