The Alabama Hospital Association Trust (hereinafter the "Trust") contracted with Jackson County Hospital (hereinafter the "Hospital") to provide general liability insurance and to defend the Hospital in certain kinds of lawsuits. Gerri Adkins, an employee at the Hospital, subsequently sued the Hospital under Ala. Code 1975, § 25-5-11.1, alleging a retaliatory discharge; she alleged that the Hospital had terminated her from her job as a collector solely because she had filed a workers' compensation action against the Hospital. Adkins and another employee, Alice Webb, also filed sex discrimination actions against the Hospital in a federal court. The Trust refused to defend the Hospital against these three actions, which it determined were excluded from coverage under the policy, and it sued for a judgment declaring that it had provided no coverage as to those actions. The trial court entered a summary judgment for the Trust, and the Hospital appeals.
The first issue raised is whether the insurance agreement requires the Trust to defend the Hospital on Adkins's wrongful termination claim under § 25-5-11.1. That statute provides:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter. . . ."
The Hospital argues that a claim under § 25-5-11.1 is a traditional tort claim, not a claim under our Workers' Compensation Act, and is thus included under the insurance agreement. This Court has recognized that § 25-5-11.1 was created to "prevent an employee's termination 'solely because the employee [had] instituted or maintained [an] action against the employer to recover worker's compensation benefits.' "Twilley v. Daubert Coated Prods., Inc., 536 So.2d 1364, 1367
(Ala. 1988). This Court has not, however, previously determined that a § 25-5-11.1 claim for retaliatory discharge "arises under" the Workers' Compensation Act to the extent that it *Page 1371 
ceases to be characterized as a "tort claim" in the traditional sense of that term.
To establish that Adkins's § 25-5-11.1 claim was excluded from coverage under the policy, the Trust relied upon Wojciakv. Northern Package Corp., 310 N.W.2d 675 (Minn. 1981), wherein the Supreme Court of Minnesota construed an insurance provision similar to that before us to exclude coverage for a retaliatory discharge claim provided for by the Minnesota workers' compensation statutes. The Minnesota statute specifically provides (a) damages for diminution in workers' compensation benefits, (b) punitive benefits not to exceed three times the amount of workers' compensation benefits, and (c) no offset by any worker's compensation to which the employee is entitled. The Minnesota statute thus intertwines damages relating to traditional workers' compensation benefits with the claims of "discharging or threatening to discharge" an employee seeking worker's compensation benefits.
By contrast, the Alabama statute has no special provisions tying the claim to damages relating to workers' compensation benefits; on the contrary, a plaintiff who brings a claim under § 25-5-11.1 can be awarded damages under the general law of torts. Caraway v. Franklin Ferguson Mfg. Co., 507 So.2d 925
(Ala. 1987). See, also, Continental Eagle Corp. v. Mokrzycki,611 So.2d 313 (Ala. 1992) (mental anguish and loss of wages compensable "under the general law of torts and, thus, under Ala. Code 1975, § 25-5-11.1." 611 So.2d at 315). The award of such damages could entail proof of damage or harm and could entail jury trials, which are nonexistent in traditional workers' compensation actions and which are not contemplated by the Minnesota workers' compensation law. Based on the differences between the Alabama statute and the Minnesota statute, we find the holding of Wojciak not persuasive here.
We note that claims that do "arise under" workers' compensation laws are generally for occupational diseases and accidental injuries resulting from one's employment. The §25-5-11.1 action for retaliatory discharge operates to protect an employee who files a traditional worker's compensation claim but, in so doing, does not itself become a "worker's compensation" action. We therefore hold that the retaliatory discharge claim is in the nature of a traditional tort, albeit one that is applied in the specialized circumstances of a worker's compensation claim, and thus does not arise "under" our workers' compensation law for purposes of the general liability insurance provision in this case. The trial court thus erred in holding that the Trust was entitled to a judgment as a matter of law on the claim of retaliatory discharge; thus, as to that claim its judgment is reversed and the cause is remanded for further proceedings.
The second issue raised is whether the insurance agreement requires the Trust to defend the Hospital on the sexual discrimination claims filed by Adkins and Webb. The agreement provides:
 "The Trust will pay on behalf of members those sums which the member shall become legally obligated to pay as damages because of any claim or claims first made against the member during the report year period because of:
 "AGREEMENT A: Hospital Professional Liability arising out of a medical incident involving the performance of professional services rendered or which should have been rendered, subsequent to the retroactive date and prior to the end of the report year period, by the member or by any person for whose acts or omissions the member is legally liable, and
 "AGREEMENT B: General Liability — Bodily injury or property damage caused by an occurrence
which takes place subsequent to the retroactive date and prior to the end of the report year period, and
 "AGREEMENT C: Personal Injury Liability caused by an occurrence which takes place subsequent to the retroactive date and prior to the end of the report year period; *Page 1372 
and the Trust shall have the right and duty to defend any suit against a member seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent, and shall make such investigation and settlement of any claim or suit as it deems expedient."
(Emphasis added.) For purposes of coverage under Agreements A and B, an "occurrence" is defined as an "[a]ccident, including continuous or repeated exposure to conditions, or the happening of any of the offenses described in the definition of 'Personal Injury,' which results in personal injury or property damage neither expected nor intended from the standpoint of the member."
The Hospital argues that the sexual discrimination claims brought by Adkins and Webb pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17 (1970 
Supp. II 1972), are based on a continuous "occurrence," as that term is defined in the agreement. In their complaints, Adkins and Webb allege that they were treated less favorably than their co-employees and were so treated because of their sex. To sustain this "disparate treatment" cause of action, the plaintiffs must establish that their employer acted with a discriminatory intent. Solo Cup Co. v. Federal Ins. Co.,619 F.2d 1178 (7th Cir. 1980), cert. denied, 449 U.S. 1033,101 S.Ct. 608, 66 L.Ed.2d 495 (1980). Under the terms of its policy with the Trust, the Hospital has coverage only for injuries arising from its unintentional acts; accordingly, the trial court properly determined that the Trust has no duty to defend the Hospital on the sexual discrimination claims.
The summary judgment is hereby affirmed in part and reversed in part, and the cause is remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.