BOLIN, Justice.
Fernando Rodriguez-Flores a/k/a Jose Edgardo Pizarro-Plaza appeals from the order of the Mobile Circuit Court dismissing his claims alleging retaliatory discharge and fraud. We affirm in part, reverse in part, and remand.

Facts and Procedural History

Rodriguez-Flores was employed by U.S. Coatings, Inc., as a painter. He states that in “early” 2010 he suffered an injury to his right lower extremity while working in a dry dock. Rodriguez-Flores further alleges that on June 5, 2011, he became violently ill after being exposed to paint fumes and suffering from heat exhaustion. Rodriguez-Flores’s employment was terminated on June 27, 2011. Rodriguez-Flores sued U.S. Coatings on September 26, 2011, seeking to recover worker’s compensation benefits pursuant to the Alabama Workers’ Compensation Act, § 25-5-1 et. seq., Ala.Code 1975 (“the Act”); asserting a retaliatory-discharge claim pursuant to § 25-5-11.1, Ala.Code 1975; and also asserting fraud, wantonness, and tort-of-outrage claims. The first two counts of Rodriguez-Flores’s complaint sought worker’s compensation benefits for the injuries allegedly occurring in early 2010 and in June 2011. Rodriguez-Flores further alleged in his complaint:
“THIRD CAUSE OF ACTION RETALIATORY DISCHARGE
“19. On or about June 27, 2011, Defendant U.S. Coatings, Inc., wrongfully terminated [Rodriguez-Flores’s] employment because he asserted a claim for workers’ compensation benefits.
“20. Such action by [U.S. Coatings] violates the Alabama Workers’ Compensation Act, Ala.Code § 25-5-11.1 (1975).
“21. As proximate result and consequence of said conduct, [Rodriguez-Flores] has suffered substantial damage[ ], including but not limited to past, present and future lost earnings, stress and mental anguish. [Rodriguez-Flores] has also incurred substantial *876 medical bills for the treatment of the underlying injury.
“WHEREFORE, Fernando Rodriguez-Flores, aka Jose Edgardo Pizarro-Plaza, demands judgment against U.S. Coatings, Inc., for compensatory and punitive damages in an amount in excess of the minimum jurisdictional limits of this Court, together with interest and costs of Court.
“FOURTH CAUSE OF ACTION FRAUD
[[Image here]]
“23. After [Rodriguez-Flores] made several visits to a company doctor following his leg injury in 2010, he was referred to another doctor who wanted to begin more aggressive treatments.
“24. [U.S. Coatings], through [Rodriguez-Flores’s] supervisor, Jerry (last name unknown at this time), informed [Rodriguez-Flores] that he would be feed if he continued to seek treatment for his injury. [U.S. Coatings] also told [Rodriguez-Flores] that he was not entitled to be paid for time missed from work due to his injury. Jerry further instructed [Rodriguez-Flores] to tell the doctor that his injury was healed or [Rodriguez-Flores] would be feed. Finally, Jerry told [Rodriguez-Flores] that he was not entitled to be paid for time missed from work because of the injury and that [Rodriguez-Flores] was only entitled to be paid for hours actually worked.
“25. [Rodriguez-Flores], who does not speak English and who had no reason to believe that his supervisor was being dishonest with him, reasonably relied on his supervisor’s statements and as a result discontinued his treatments and doctor visits and continued to work while in severe pain.
“26. As a direct result of his reliance on his supervisor’s statements, [Rodriguez-Flores] continued to work while in severe pain, causing him to suffer severe physical, mental, and emotional pain and anguish.
“27. As a direct and proximate result of [U.S. Coatings’] fraud, [Rodriguez-Flores] continues to suffer severe physical, mental, and emotional distress and will continue to so suffer in the future.
“28. [Rodriguez-Flores’s] supervisor made the statements to [Rodriguez-Flores] either willfully to deceive or recklessly, in order to convince [Rodriguez-Flores] to discontinue treatment for his injury.
“WHEREFORE, Fernando Rodriguez-Flores, aka Jose Edgardo Pizarro-Plaza, demands judgment against U.S. Coatings, Inc., for compensatory and punitive damages in an amount in excess of the minimum jurisdictional limits of this Court, together with interest and costs of Court.
“FIFTH CAUSE OF ACTION OUTRAGE/WANTONNESS
[[Image here]]
“30. [U.S. Coatings] was aware that [Rodriguez-Flores’s] authorized treating physician opined that [Rodriguez-Flores] suffered from a medical condition that was wholly caused by his on-the-job accident in early 2010.
“31. [U.S. Coatings] was aware that [Rodriguez-Flores’s] authorized treating physician opined that [Rodriguez-Flores] was in severe pain due to the presence of his medical condition that was wholly caused by his on-the-job accident in early 2010.
“32. Despite having the foregoing knowledge regarding [Rodriguez-Flores’s] medical condition, [U.S. Coatings] consciously disregarded [Rodriguez-Flores’s] rights while aware that harm would likely result, refused to pay *877 [Rodriguez-Flores] temporary total or partial disability benefits, and ordered him to discontinue treatment or be fired.
“38. The constructive denial of [Rodriguez-Flores’s] request for treatment, under the foregoing circumstances, is conduct that is extreme, outrageous and intolerable in civilized society.
“34. As a direct result of the [U.S. Coatings’] refusal to grant [Rodriguez-Flores] the medical treatment to which he is entitled by Alabama law, [Rodriguez-Flores] has unnecessarily endured and will continue to endure in the future, severe bodily pain, mental anguish, and emotional distress.
“WHEREFORE, [Rodriguez-Flores] prays that the jury award compensatory damages for the damages [Rodriguez-Flores] has suffered as a result of [U.S. Coatings’] intentional, wanton and/or reckless conduct as well as punitive damages to punish [U.S. Coatings] for its intolerable conduct and to deter others from such wrongful conduct.”
On January 19, 2012, U.S. Coatings, relying upon Ex parte Bender Shipbuilding & Repair Co., 879 So.2d 577 (Ala.2003), moved the trial court to dismiss all state-law claims asserted against it, arguing that those claims were preempted by 33 U.S.C. § 905(a), a provision of the Longshore and Harbor Workers’ Compensation Act, 33 U.S.C. § 901 et. seq. (“the LHWCA”).
On February 8, 2012, Rodriguez-Flores filed a response in opposition to U.S. Coatings’ motion to dismiss, arguing that the decision in Ex parte Bender Shipbuilding is distinguishable from this case because, unlike the employee in Ex parte Bender Shipbuilding, Rodriguez-Flores had not sought or received benefits under the LHWCA and that the remedies he was seeking were completely within Alabama statutory and common law. Rodriguez-Flores further argued that, based upon the facts of this case, he had the option, pursuant to Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), to seek benefits under the LHWCA or under Alabama’s workers’ compensation scheme and that he has chosen to seek benefits under the Act.
On March 1, 2012, Rodriguez-Flores supplemented his response in opposition to the motion to dismiss by submitting additional argument in opposition to the motion, as well as his affidavit. Rodriguez-Flores acknowledged in his supplemental response that accidental, negligent, and reckless acts by an employer cannot justify bringing a tort claim against the employer in a state court if the basis of the tort is within the scope of the LHWCA. However, he argued that the courts have recognized an exception to the exclusive-liability provision of § 905(a), “where the injury inflicted is the result of an intentional act.” Houston v. Bechtel Assocs. Prof'l Corp. D.C., 522 F.Supp. 1094, 1096 (D.D.C.1981). He argued that the facts presented here, which, he says, indicate that U.S. Coatings intended with actual malice to harm him both physically and financially, fall within that recognized exception.
Rodriguez-Flores also argued that, given the alleged conduct of U.S. Coatings in this case, he should be allowed to pursue his retaliatory-discharge claim brought pursuant to § 25-5-11.1, Ala.Code 1975, because the relief provided him by the LHWCA is inadequate as it can result only in a small penalty being levied against U.S. Coatings, whereas he is entitled to recover punitive damages and compensation for mental anguish in a retaliatory-discharge claim brought pursuant to § 25-5-11.1.
On March 11, 2012, the trial court entered the following order:
“This matter is before the Court on the Motion of [U.S. Coatings] to Dismiss all of [Rodriguez-Flores’s] claims on the *878 grounds that they are barred by the exclusivity provisions of the Longshore and Harbor Workers’ Compensation Act (‘LHWCA’), 33 U.S.C. Section 905(a).
“After considering the pleadings, briefs, and arguments of counsel, the Court finds that the Motion is due to be GRANTED IN PART, and DENIED IN PART.
“Counsel for [Rodriguez-Flores] concedes that his client ‘has the choice of seeking benefits from either the LHWCA or the Alabama Workers’ Compensation Act.’ However, he also argues that the injuries ‘were outside the navigable waters of the United States.’ Because the LHWCA provides at least concurrent coverage for the injuries of [Rodriguez-Flores], the Court finds that the reasoning of Ex parte Bender Shipbuilding [& Repair Co.], 879 So.2d 577 [(Ala.2003)], bars his tort claims. Because the record is not clear as to where [Rodriguez-Flores] may have been injured, the Court cannot say that the Alabama Workers’ Compensation Act does not provide concurrent coverage for his claim to worker’s compensation benefits.
“For the foregoing reasons, [U.S. Coatings’] Motion to Dismiss is GRANTED as to Count Three and Count Four of his Complaint. Its Motion to Dismiss is DENIED as to Count One and Count Two.”
(Capitalization in original.)
On August 22, 2012, U.S. Coatings moved the trial court to certify its order of March 11, 2012, as final pursuant to Rule 54(b), Ala. R. Civ. P. On August 26, 2012, the trial court entered an order certifying the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P.[1]

Standard of Review

This Court has stated:
“In Newman v. Savas, 878 So.2d 1147 (Ala.2003), this Court set out the standard of review of a ruling on a motion to dismiss for lack of subject-matter jurisdiction:
“ ‘A ruling on a motion to dismiss is reviewed without a presumption of correctness. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993). This Court must accept the allegations of the complaint as true. Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). Furthermore, in reviewing a ruling on a motion to dismiss we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail. Nance, 622 So.2d at 299.’
“878 So.2d at 1148-49.”
Pontius v. State Farm Mut. Auto. Ins. Co., 915 So.2d 557, 563 (Ala.2005). See also Ex parte Alabama Dep’t of Transp., 978 So.2d 17, 21 (Ala.2007).

Discussion

I. The State-Law Fraud Claim

The LHWCA, as amended, establishes a comprehensive federal workers’ compensa *879 tion program that provides longshoremen and their families with medical, disability, and survivor benefits for work-related injuries and death. The injured or deceased longshoreman’s employer must pay the statutory benefits regardless of fault, but is shielded from any further liability to the longshoreman or his or her estate. Howlett v. Birkdale Shipping Co., S.A., 512 U.S. 92, 114 S.Ct. 2057, 129 L.Ed.2d 78 (1994).[2]
The history of the LHWCA as it relates to preemption and state workers’ compensation schemes has been explained as follows:
“LHWCA jurisprudence has its genesis early in this century. In Southern Pac. Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 528-29, 61 L.Ed. 1086 (1917), the Supreme Court ruled that states’ attempts to apply their workmen’s compensation laws to maritime injuries were constitutionally impermissible, thereby establishing the so-called Jensen line, where land meets water, at which point state jurisdiction concluded. In the ensuing years, the Court softened the rigid Jensen line somewhat, allowing states to extend their compensation coverage schemes to maritime circumstances that were maritime but ‘local in character.’ See Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). Still, many longshoremen injured on navigable water were left without a remedy. Congress responded in 1927 by enacting the LHWCA as a federal compensation law.
“With the enactment of the LHWCA, workers injured upon the navigable waters had compensation to redress their injuries. In its original version, however, the LHWCA’s coverage stopped at the shoreline, allowing compensation for injuries occurring ‘on the navigable waters,’ but only if compensation under state law was unavailable. Pub. L. No. 69-803, ch. 509, § 3(a), 44 Stat. 1424, 1426 (1927). The line of demarcation between federal and state coverage, however, was often difficult to ascertain. As a result of the ‘doubtful jurisdictional line,’ the Supreme Court, in Davis v. Department of Labor, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246 (1942), recognized for the first time that the area surrounding the ‘doubtful’ line was a fact-sensitive ‘twilight zone,’ where ‘employees must have their rights determined case by case.’ Calbeck v. Travelers Ins. Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), further advanced the notion of concurrent federal and state jurisdiction, holding that the LHWCA covered all injuries on the navigable waters even if a case of injury was also within the reach of state compensation laws. Id. 370 U.S. at 126-27, 82 S.Ct. at 1203-04. At this point in its jurisprudential evolution, although ‘mar *880 itime but local’ injuries fell within the twilight zone’s concurrent jurisdiction, the LHWCA’s reach still stopped at the water’s edge.
“This produced a disparity in benefits for the same type of injury, depending on which side of the water’s edge the injury occurred. Congress ameliorated this disparity in 1972 with amendments to the LHWCA’s coverage provision which extended the LHWCA landwardly. The LHWCA came ashore when its coverage provision was amended to include injuries ‘occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).’ 38 U.S.C. § 903(a). See Longshoremen’s and Harbor Workers’ Compensation Act Amendments of 1972, Pub. L. No. 92-576, § 2(a), 86 Stat. 1251; H.R.Rep. No. 1441, 92nd Cong., 2nd Sess., reprinted in 1972 U.S.Code Cong. & Admin. News 4698, 4707-08.
“Any doubts about the effect of the landward extension of the LHWCA on the twilight zone were retired by the Supreme Court’s latest seminal expression in the area, Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980). Five employees of Sun Ship, Inc., a shipbuilding and ship repair outfit located on the Delaware River, were injured on land and filed a claim for state workmen’s compensation benefits under the Pennsylvania Workmen’s Compensation Act. The state Appeal Board affirmed the award of benefits to the workers, but the Commonwealth of Pennsylvania challenged the benefits awards, asserting that the LHWCA was the workers’ exclusive remedy. The Supreme Court affirmed:
“ ‘Given that the pre-1972 Longshoremen’s Act ran concurrently with state remedies in the ‘maritime but local’ zone, it follows that the post-1972 expansion of the Act landward would be concurrent as well. For state regulation of worker injuries is even more clearly appropriate ashore than it is upon navigable waters.’
“Id. 100 S.Ct. at 2436. In other words, when the LHWCA came ashore in 1972, the twilight zone followed. Sun Ship makes crystal clear the notion that workers injured on land, yet who fall within LHWCA coverage, are within the twilight zone and may pursue federal or state compensation benefits.
“The twilight zone, therefore, is a specie of maritime law in which overlapping jurisdictional spheres create concurrent jurisdiction between the LHWCA and state laws. Currently, maritime injuries fall within three jurisdictional spheres. At the seaward extreme, the LHWCA is the exclusive remedy. For injuries occurring on land outside the jurisdictional grasp of the LHWCA, state law alone governs. In the twilight zone, however, ‘maritime but local’ injuries may be compensated by federal or state law. Id. at 2436; In re All Maine Asbestos Litigation (BIW Cases), 589 F.Supp. 1563, 1568 (D.Maine 1984) (hereinafter In re All Maine); see 1A Benedict on Admiralty § 10 (1987).”
Wallace v. Ryan-Walsh Stevedoring Co., 708 F.Supp. 144, 151-53 (E.D.Tex.1989) (footnotes omitted).
Section 904 of the LHWCA provides, in part, that “[e]very employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title” and that such compensation “shall be payable irrespective of fault as a *881 cause for the injury.” Section 905(a) of the LHWCA provides, in part, that “[t]he liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee” and that, in such action, “the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.” The exclusivity provision of the LHWCA has been explained as follows:
“The LHWCA, at 33 U.S.C. § 905, precludes a personal injury action against any employer who complies with the LHWCA. Just as Ala.Code 1975, § 25-5-53, provides that workers’ compensation benefits are the exclusive remedy for injuries received in a work-related accident, the LHWCA provides, in 33 U.S.C. § 905(a), that an injured worker may not maintain a tort action against his employer for any negligence of the employer giving rise to the injury; the injured worker’s exclusive remedy is under the LHWCA. In International Paper Co. v. Murray, 490 So.2d 1234 (Ala.Civ.App.1985), aff'd in part, rev’d in part on other grounds, Ex parte Murray, 490 So.2d 1238 (1986), this court noted:
“ ‘The LHWCA was adopted in 1927 as a federal compensation plan for maritime workers, and was patterned after existing state workers’ compensation laws.... The LHWCA is a workmen’s compensation statute similar to our own, where employers have “relinquished their defenses to tort actions in exchange for limited and predictable liability.” ’
“490 So.2d at 1236 (quoting Morrison Knudsen Constr. Co. v. Director, Office of Workers’ Compensation Programs, United States Department of Labor, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983)).”
Jarrell v. Bender Shipbuilding & Repair Co., 681 So.2d 1092, 1094 (Ala.Civ.App.1996). Thus, employers enjoy immunity from tort claims under the LHWCA as they do under the Act. Jones v. Halliburton Co., 791 F.Supp.2d 567, 582 (S.D.Tex.2011) (noting that the “exclusivity provision of LHWCA ‘completely obliterates the rights at common, civil or maritime law against Employer and fellow employee’” and that “ ‘an employer that secures insurance coverage for its employees as required by the [Defense Base Act, 2 U.S.C. § 151 et seq.,] is entitled to immunity under the LHWCA’”); Ex parte Shelby Cnty. Health Care Auth., 850 So.2d 332, 338 (Ala.2002) (stating that the Act provides immunity from common lawsuits for those employers and carriers who come within the Act and makes it clear that the Act is an exclusive remedy only in situations where an employee is suing his employer for injuries sustained in the course of his employment). This immunity is extended by the LHWCA to include co-employee actions. § 933(i); Perron v. Bell Maint. & Fabricators, Inc., 970 F.2d 1409 (5th Cir.1992). Although § 25-5-ll(b), Ala.Code 1975, allows for co-employee suits in certain limited circumstances involving willful conduct, this Court has held that such suits are barred by the exclusivity provisions of the LHWCA where the accident falls within the twilight zone of concurrent jurisdiction and the scope of the LHWCA. Fillinger v. Foster, 448 So.2d 321 (Ala.1984).
Some courts have recognized an exception to the exclusivity provision of the LHWCA where the employer has committed an intentional tort. Fisher v. Halliburton, 667 F.3d 602 (5th Cir.2012). However, these “cases take a very narrow view of the types of intentional injury that lie outside of the LHWCA — the cases consis *882 tently require that the employer have had a specific intent or desire that the injury occur.” Id. at 618. See Sample v. Johnson, 771 F.2d 1335, 1346 (9th Cir.1985); Roy v. Bethlehem Steel Corp., 838 F.Supp. 312, 316 (E.D.Tex.1993) (“The employer can be sued under LHWCA, however, if he committed an intentional tort, i.e., genuine, intentional injury.”); Houston v. Bechtel Assocs. Prof'l Corp., D.C., 522 F.Supp. at 1096 (observing that “[t]he courts have ... carved out an exception to exclusive liability provisions where the injury inflicted is the result of an intentional act”); Austin v. Johns-Manville Sales Corp., 508 F.Supp. 313, 316 (D.Me.1981) (“Nothing short of a specific intent to injure the employee falls outside the scope of the [LHWCA].”); Sharp v. Elkins, 616 F.Supp. 1561 (D.La.1985); and Rustin v. District of Columbia, 491 A.2d 496, 501 (D.C.1985) (observing that the exclusivity provision of the LHWCA “does not reach actions where the employer specifically intended to injure the employee”).
Although Rodriguez-Flores acknowledges in his brief that the scope of the exception to the exclusivity provision of the LHWCA is exceedingly narrow, he nevertheless argues that his fraud claim falls within the exception. We disagree. In Ex parte Bender Shipbuilding, supra, the employee was injured during the course of his employment as a shipfitter at the employer’s shipyard and as such his claim was subject to the concurrent jurisdiction of the LHWCA and the Act. The employee was paid benefits under the LHWCA. The employee then sued his employer asserting a fraud claim based on the employee’s allegations that he was entitled to be offered light-duty work after he was released to return to work following his injury but that the employer had falsely represented to him that it had no light-duty work available. The employee alleged that he suffered monetary losses and mental anguish as the result of his employer’s alleged fraud. The employer moved the trial court for a summary judgment, arguing that the employee’s fraud claim was barred by the exclusivity provision found in § 905(a) of the LHWCA and that, although some courts had recognized an intentional-tort exception to the LHWCA’s exclusivity provision if the employer had specifically intended to injure the employee, there had been no allegation or evidence presented in the case that the employer had specifically intended to injure the employee. The case proceeded to trial, and the jury returned a verdict in favor of the employee for $40,000.
On appeal to the Court of Civil Appeals, the employer again argued that the employee’s claims were preempted by the LHWCA. However, the Court of Civil Appeals rejected that argument, stating:
“The LHWCA did not require [the employer] to provide light-duty work to [the employee] as part of his ‘compensation,’ and it did not provide [the employee] with any redress for [the employer’s] alleged fraud in denying him light-duty work. See generally 33 U.S.C. § 901 et seq. The mere fact that [the employee] could not claim [the employer’s] light-duty-work benefit unless [the employer] was also responsible for paying his LHWCA compensation did not convert the light-duty-work benefit into ‘compensation’ due under the LHWCA. Thus, [the employer’s] argument that [the employee’s] claim is simply a claim for the mishandling or denial of benefits due under the LHWCA is without merit....
[[Image here]]
“Unlike the claims in [the cases] relied upon by [the employer], the state-law claim submitted to the jury in the present case was not a claim for an alleged *883 improper handling or denial of benefits due under the LHWCA. As noted, [the employer] eventually paid all compensation and medical benefits due [the employee] under the Act, as well as all related penalties due under the Act, and [the employee] dismissed his claims pertaining to [the employer’s] initial denial of those benefits.
“[The employee’s] claim that was submitted to the jury was based upon an alleged intentional misrepresentation that there was no light-duty work available during the period of [the employee’s] temporary disability. Any obligation to provide [the employee] with such light-duty work in the first place, and therefore any duty to avoid misrepresenting the availability of such work, arose outside of the LHWCA. It arose because [the employer] undertook to provide such work and the full compensation benefits associated therewith as an additional benefit to its employees. Providing such work was not a benefit required by the LHWCA.”
Bender Shipbuilding & Repair Co. v. Walley, 879 So.2d 568, 576-77 (Ala.Civ.App.2002).
On certiorari review, this Court explained:
“[A]n employer charged pursuant to the LHWCA with compensating an injured employee may provide light-duty work for an injured employee in certain circumstances and thereby avoid the obligation to pay that employee temporary total disability benefits that might otherwise apply. If the employer is not able to establish that suitable alternate employment is available, either in its own facility or elsewhere, then the LHWCA obligates the employer to pay disability benefits to the employee. See Manigault v. Stevens Shipping Co., 22 BRBS 332 (1989) ...
“... [T]he availability of a light-duty-work program, while not mandated by the LHWCA, is an economic benefit an employer can offer its employees in lieu of its obligation to pay temporary total disability benefits. Although the LHWCA does not require that such a benefit be provided, claims regarding the mishandling of an economic benefit such as light-duty work, made available to an employee as the employer’s alternative means of complying with the LHWCA, would arise under the LHWCA.”
Ex parte Bender Shipbuilding & Repair Co., 879 So.2d 577, 583 (Ala.2003).
This Court further determined that the employee’s claim was in essence a claim alleging that the employer had, “intentionally or in bad faith, refused to award a benefit to him and, in so doing, [had] intentionally inflicted emotional distress,” 879 So.2d at 584, and determined that that claim was barred by the exclusivity provision of the LHWCA. This Court stated:
“Most federal courts that have examined the question whether an employee’s state-law claims alleging intentional or bad-faith refusal to pay LHWCA compensation, wrongful termination of LHWCA benefits, or the intentional infliction of emotional distress as a result of failure to pay or the termination of LHWCA benefits have concluded that such claims are preempted by the LHWCA. See, e.g., Barnard v. Zapata Haynie Corp., 975 F.2d 919, 920 (1st Cir.1992) (holding that the plaintiffs claim for the employer’s intentional infliction of emotional distress in failing to pay benefits was preempted by the LHWCA and that the LHWCA is the ‘exclusive remedy for [an employer’s] failure to make timely [compensation] payments, irrespective of [the employer’s] reasons for nonpayment’); Atkin *884 son v. Gates, McDonald & Co., 838 F.2d 808, 812 (5th Cir.1988) (holding that a state-law cause of action addressed by the LHWCA is preempted and that ‘the LHWCA is plainly preemptive of any state law claim for intentional or bad faith wrongful refusal to pay benefits due under the [LHWCA]’); Texas Employers’ Ins. Ass’n v. Jackson, 820 F.2d 1406 (5th Cir.1987), rev’d on other grounds, 862 F.2d 491 (5th Cir.1988) (en banc); Hall v. C & P Tel. Co., 809 F.2d 924 (D.C.Cir.1987) (claims alleging intentional infliction of emotional distress in bad-faith refusal to make timely compensation payments fall within the exclusivity provisions of the LHWCA); Sample v. Johnson, 771 F.2d 1335 (9th Cir.1985) (claims for wrongful refusal to pay or delay in paying LHWCA benefits are preempted by the LHWCA).
“In Jackson, a panel of the United States Court of Appeals for the Fifth Circuit concluded that the employee’s bad-faith claims brought under Texas law were preempted by the LHWCA. Jackson had sued his employer’s LHWCA insurance carrier in state court, alleging bad-faith insurance practices on the part of the carrier. The Jackson court explained that federal law preempts state law in three circumstances: first, when Congress explicitly expresses its intent to preempt state law; second, when Congress’s intent to displace state law can be inferred through the comprehensiveness or pervasiveness of the federal regulatory scheme; and third, when state law conflicts with federal law or interferes with the accomplishment and execution of Congress’s purpose. 820 F.2d at 1411. The panel then concluded that the LHWCA preempted the state law invoked by Jackson in all three circumstances. Id. That portion of the panel’s decision was affirmed by the Fifth Circuit sitting en banc, although the en banc court reversed the decision on other grounds. See 862 F.2d at 496 n. 7.
“In Atkinson, the Fifth Circuit noted that ‘a majority of courts have held that workers’ compensation statutes, particularly where they address the subject of delayed or withheld compensation benefits, provide the exclusive remedy in that respect.’ 838 F.2d at 813. The Fifth Circuit then quoted the following from 2A Larson, Workmen’s Compensation Law § 68.34(c), 13-145 to -146 (1987):
“ ‘ “It seems clear that a compensation claimant cannot transform a simple delay in payments into an actionable tort by merely invoking the magic words ‘fraudulent, deceitful and intentional’ or ‘intentional infliction of emotional distress’ or ‘outrageous’ conduct in his complaint. The temptation to shatter the exclusiveness principle by reaching for the tort weapon whenever there is a delay in payments or a termination of treatment is all too obvious, and awareness of this possibility has undoubtedly been one reason for the reluctance of courts to recognize this tort except in cases of egregious cruelty or venality.
“ ‘ “One final factor may be noted that has figured in many of these cases: the presence in the statute of an administrative penalty for the very conduct on which the tort suit is based. A majority of the courts have taken the view that this evidences a legislative intent that the remedy for delay in payments, even vexatious delay, shall remain within the system in the form of some kind of penalty.”’
“838 F.2d at 814.”
Ex parte Bender Shipbuilding, 879 So.2d at 584-85.
*885 Rodriguez-FIores alleged that U.S. Coatings, through its employee, fraudulently represented to him that “he would be fired if he continued to seek treatment for his injury,” “that he was not entitled to be paid for time missed from work due to his injury,” and “that he was not entitled to be paid for time missed from work because of the injury and that [he] was only entitled to be paid for hours actually worked”; that he was directed to “tell the doctor that his injury was healed or [he] would be fired”; and that he reasonably relied on those representations that proximately resulted in his suffering severe physical, mental, and emotional pain and anguish. These allegations are in the nature of an intentional or bad-faith refusal to provide benefits and/or a wrongful termination of benefits similar to the fraud claim asserted in Ex parte Bender. Rodriguez-FIores has not alleged a specific intent on the part of U.S. Coatings to injure him, which is required in order to fall within the recognized exception to the exclusivity provision of the LHWCA. Based on the foregoing, Rodriguez-Flores’s state-law fraud claim is barred by both the exclusivity provision of the LHWCA and the Act. Accordingly, the trial court did not err in dismissing the fraud claim.

II. Retaliatory-Discharge Claim

Rodriguez-FIores argues that the trial court erred in determining that his retaliatory-discharge claim, brought pursuant to § 25-5-11.1, Ala.Code 1975, was preempted by § 905(a) of the LHWCA. Specifically, Rodriguez-FIores has argued that the relief provided by the LHWCA for a retaliatory discharge is not concurrent with and is inadequate to the relief provided by § 25-5-11.1. U.S. Coatings contends that the retaliatory-discharge claim is in the nature of a tort claim and is also precluded by § 905(a) of the LHWCA. Section 25-5-11.1 provides, in part:
“No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits under this chapter....”
A retaliatory-discharge claim filed pursuant to § 25-5-11.1 is in the nature of a traditional tort claim, Jackson Cnty. Hosp. v. Alabama Hosp. Ass’n Trust, 619 So.2d 1369, 1371 (Ala.1993), and a plaintiff is entitled to recover both compensatory and punitive damages on a claim alleging a retaliatory discharge pursuant to § 25-5-11.1. See AutoZone, Inc. v. Leonard, 812 So.2d 1179 (Ala.2001).
Section 948a of the LHWCA provides:
“It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation from such employer, or because he has testified or is about to testify in a proceeding under this chapter.... Any employer who violates this section shall be liable to a penalty of not less than $1,000 or more than $5,000, as may be determined by the deputy commissioner. All such penalties shall be paid to the deputy commissioner for deposit in the special fund as described in section 944 of this title, and if not paid may be recovered in a civil action brought in the appropriate United States district court. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination: Provided, That if such employee shall cease to be qualified to perform the duties of his employment, he shall not be entitled to such restoration and compensation. The employer alone and not his carrier shall be liable *886 for such penalties and payments. Any provision in an insurance policy undertaking to relieve the employer from the liability for such penalties and payments shall be void.”
In Fillinger, supra, the employee, who was working as a “shipfítter” at a land-based operation and within the scope of the LHWCA, was injured during the course of his employment. Although eligible to do so, the employee did not seek benefits under the LHWCA, choosing rather to seek state workers’ compensation benefits pursuant to the Act. The employee also sued a co-employee pursuant to § 25 — 5—11(b), alleging that the co-employee negligently provided him with an unreasonably dangerous tool that resulted in his being injured. The co-employee raised § 933(i) of the LHWCA as a defense to the negligence claim. Section 933(i) provides, in part:
“The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured ... by the negligence or wrong of any other person or persons in the same employ: Provided, That this provision shall not affect the liability of a person other than an officer or employee of the employer.”
The case proceeded to trial, and the jury returned a verdict in favor of the injured employee. The co-employee appealed the judgment, arguing that co-employee suits brought in state courts for damages are barred when the alleged injury falls within the scope of the LHWCA. The injured employee contended that in a “case of land-based maritime injury, concurrent jurisdiction exists between federal and state remedies and that the plaintiff is not barred by the LHWCA unless he elects to pursue remedies under the LHWCA.” Fillinger, 448 So.2d at 323. This Court explained the parties’ argument as follows:
“[The co-employee] strongly argues that, as a matter of federal law, specifically 33 U.S.C. § 933(i), the [injured employee] was prevented from maintaining a co-employee damage suit. [The co-employee’s] argument is based upon the proposition that to allow a co-employee suit by a covered maritime employee when the federal statute specifically prohibits such suits would be to create the ‘type of federal-state conflict in which, under long established principles of federal pre-emption, pre-emption of state law is required.’
“[The injured employee] contends that in a case of a land-based maritime injury, concurrent jurisdiction exists between federal and state remedies. In fact, [the injured employee] contends that the U.S. Supreme Court in Sun Ship[, Inc. v. Pennsylvania, 447 U.S. 715 (1980)], has held that the LHWCA does not preclude concurrent state jurisdiction under a state workmen’s compensation act in a case involving a harbor worker injured on land. [The injured employee] states that this was the sole issue in Sun Ship, supra, as is apparent from the opinion, and that the issue was decided in his favor. The Court, in Sun Ship, supra, opined:
“ ‘The single question presented by these consolidated cases is whether a State may apply its workers’ compensation scheme to land-based injuries that fall within the coverage of the Longshoremen’s and Harbor Workers’ Compensation Act (LHWCA), as amended in 1972. 33 U.S.C. §§ 901-950. We hold that it may.’
“Sun Ship, supra, 447 U.S. at 716, 100 S.Ct. at 2434.
“[The co-employee] counters that ‘a distinction should be observed between the pre-emption of co-employee negli- *887 genee actions for damages and the area in which some degree of overlap between the Longshoremen’s and Harbor Workers’ Compensation Act and the Alabama Workers’ Compensation Act is permitted.’
“[The co-employee] argues that ‘a careful reading of the Sun Ship decision indicates that the only permissible concurrent jurisdiction between federal and state compensation laws is concurrent application of “compensation benefit” levels.’ He says ‘That is, “workers who commence their actions under state law will generally be able to make up the difference between state and federal benefit levels.” ’ (Emphasis in [original] ).
“[The co-employee] argues:
“ ‘The difference between benefit levels, however, refers to the schedule of compensation benefits, for example, for injuries to limbs, disfigurement and other categories in which weekly or biweekly benefit awards are made. This is something wholly different from the situation presented here, involving an action for damages, in which there is a clear conflict between the federal statute prohibiting co-employee damage suits and the state common law of Alabama which allows it.’ ”
Fillinger, 448 So.2d at 324-25.
In determining that the negligence claim was barred by the exclusivity provision of the LHWCA, this Court stated:
‘We are sensitive to the statement made in Sun Ship, supra, that a state may apply its workers’ compensation scheme to land-based injuries that fall within the coverage of the LHWCA, but we believe the concurrent jurisdiction for pursuit of benefits under a state’s workmen’s compensation scheme does not include common law suits for damages against co-employees.
“We are of the opinion that the LHWCA and the law of Alabama are in serious conflict as to the maintenance of co-employee suits, and because that is the case, we hold that federal law will pre-empt state law. Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 [(1963)]; Howard v. Uniroyal, Inc., 543 F.Supp. 490 (M.D.Ala.1981); Ex parte Alabama Oxygen Co., Inc., [433 So.2d 1158 (Ala.1983)]. If the ‘enforcement of state law “presents a serious danger of conflict with the administration of the federal program ... ” ’ the federal law must take precedence. Uniroyal, supra at 492. We can perceive no greater conflict than that which would be presented if we allowed this employee to sue his co-employee because he was a land-based maritime worker, and a maritime worker injured on a navigable waterway would be precluded from maintaining such a suit; therefore, we are persuaded to hold that the exclusivity provisions of 33 U.S.C. § 933(i) apply and that the state action was barred.”
Fillinger, 448 So.2d at 326. See also Hill v. Knapp, 396 Md. 700, 914 A.2d 1193 (2007). Thus, this Court’s analysis and holding in Fillinger supports the conclusion that in the context of concurrent jurisdiction, i.e., the twilight zone of coverage, a remedy provided for in a state workers’ compensation scheme would be preempted where that remedy is expressly excluded by a provision of the LHWCA. See also Hill, supra.
Fillinger differs from this case in that Fillinger involved a remedy provided for by the Act that was expressly precluded by a provision of the LHWCA. Here, both the LHWCA and the Act prohibit retaliatory discharge and provide remedies when *888 a retaliatory discharge has occurred. The distinction between the two comes only in the remedies available, not in an express prohibition of the cause of action by the federal act. In the case of the LHWCA, an employee is entitled to be restored to his employment and to be compensated for lost wages. Additionally, the employer is subject to a nominal penalty payable to a special fund administered under the LHWCA. 33 U.S.C. § 948(a). Under the Act, an employee may bring a retaliatory-discharge action and, if successful, may recover both compensatory and punitive damages. AutoZone, supra. We must determine whether this discrepancy in the remedies available for an alleged retaliatory discharge under the Act and under the LHWCA cause the Act to be preempted by the LHWCA.[3]
A state law may be preempted by federal law where the state law is in actual conflict with the federal law. MPI Acquisition, LLC v. Northcutt, 14 So.3d 126 (Ala.2009). This “conflict preemption” occurs in two situations: (1) “ ‘where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce’”; or (2) “when, ‘under the circumstances of [a] particular case, [state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.’ ” Wyeth v. Levine, 555 U.S. 555, 589, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009)(Justice Thomas concurring in the judgment) (quoting Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), and Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). We deal here with the second situation.
The Supreme Court has explained the purpose and intent of the 1972 amendments, which brought land-based maritime injuries within the fold of the LHWCA, as follows:
“As the Reports make clear, the disparities which Congress had in view in amending the LHWCA lay primarily in the paucity of relief under state compensation laws. The thrust of the amendments was to ‘upgrade the benefits.’ *889 S.Rep. No. 92-1125, supra, at 1 [(1972)]; see Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 261-262 (1977). Concurrent jurisdiction for state and federal compensation laws is in no way inconsistent with this policy of raising awards to a federal minimum. When laborers file claims under the LHWCA, they are compensated under federal standards. And workers who commence their actions under state law will generally be able to make up the difference between state and federal benefit levels by seeking relief under the [LHWCA] if the latter applies.
“To be sure, if state remedial schemes are more generous than federal law, concurrent jurisdiction could result in more favorable awards for workers’ injuries than under an exclusively federal compensation system. But we find no evidence that Congress was concerned about a disparity between adequate federal benefits and superior state benefits. Rather, it seems that the quid pro quo to the employers for the landward extension of the LHWCA by the 1972 amendments was simply abolition of the longshoremen’s unseaworthiness remedy. See S.Rep. No. 92-1125, supra, at 4-5; H-R.Rep. No. 92-1141, supra, at 1 [(1972)], U.S. Code Cong. & Admin. News 1972, at 4698; Northeast Marine Terminal Co. v. Caputo, supra, at 261-262. Indeed, it is noteworthy that in their discussion of advantages to employers under the 1972 amendments, the bill Reports dwell upon the rejection of the unseaworthiness action, and do not mention pre-emption of state remedies. See S.Rep. No. 92-1125, supra, at 4-5; H.R.Rep. No. 92-1441, supra, at 1, U.S. Code Cong. & Admin. News 1972, at 4698.”
Sun Ship, 447 U.S. at 723-25. The Supreme Court has stated that “the 1972 extension of federal jurisdiction [to include land-based maritime injuries] supplements, rather than supplants, state compensation law” and that the “language of the 1972 amendments cannot be fairly understood as pre-empting state workers’ remedies from the field of the LHWCA.” Id. at 720.
Unlike the situation in Fillinger where the LHWCA expressly precluded co-employee negligence actions while the Act permitted them, both the LHWCA and the Act prohibit a retaliatory discharge when an employee has sought benefits under the respective acts. Although an aggrieved employee may recover different damages under the respective acts, we cannot say that § 25-5-11.1 “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,” MPI Acquisition, 14 So.3d at 128, in expanding the LHWCA to include land-based maritime injuries as explained by the Supreme Court in Sun Ship. See also Wallace, supra (holding that a retaliatory-discharge claim brought pursuant to Texas workers’ compensation act, for which compensatory and punitive damages were recoverable, did not conflict with the LHWCA and was not preempted). Based on the foregoing, we conclude that Rodriguez-Flores’s retaliatory-discharge claim brought pursuant to § 25-5-11.1 did not conflict with the LHWCA and, therefore, was not preempted by the LHWCA. Accordingly, the trial court erred in dismissing the retaliatory-discharge claim.

Conclusion

The trial court’s judgment is affirmed insofar as it dismisses the fraud claim. The trial court’s judgment is reversed insofar as it dismissed the retaliatory-discharge claim, and the case is remanded for proceedings consistent with this opinion.
*890 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MOORE, C.J., and STUART, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result.

. The trial court’s judgment failed to dispose of the tort-of-outrage and wantonness claims. The tort-of-outrage claim appears to be so closely intertwined with the fraud claim as to make certification of the fraud claim pursuant to Rule 54(b), Ala. R. Civ. P., inappropriate. See Stephens v. Fines Recycling, Inc., 84 So.3d 867 (Ala.2011). Accordingly, this Court, on May 3, 2013, remanded the cause to the trial court to make the order of August 26, 2012, a final judgment pursuant to Rule 54(b), Ala. Civ. P., by ruling on count 5, the tort-of-outrage/wantonness claim, and entering an amended Rule 54(b) order. The trial court entered an order on May 8, 2013, complying with this Court's order on remand. Rodriguez-Flores did not appeal as to the tort-of-outrage/wantonness claim, and, accordingly, that claim is not before this Court on appeal.

. An employee’s coverage under the LHWCA is determined under a two-pronged test composed of a "status” requirement and a "situs” requirement. Director, Office of Workers' Compensation Programs v. Perini North River Assocs., 459 U.S. 297, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983). The status prong is satisfied if the employee was “engaged in maritime employment” at the time of his injury. 33 U.S.C. § 902(3). Section 902(3) defines "employee” as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker....” The situs prong is met if the employee’s injury occurred “upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).” 33 U.S.C. § 903(a). The parties do not dispute that Rodriguez-Flores would qualify for coverage under the LHWCA.

. This Court has stated:
" ‘Federal law may pre-empt state law in any of three ways. First, in enacting the federal law, Congress may explicitly define the extent to which it intends to pre-empt state law. E.g., Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 95-96 (1983). Second, even in the absence of express pre-emptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government. E.g., Fidelity Federal Savings & Loan Assn. v. de la Cuesta, 458 U.S. 141, 153 (1982); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Finally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963), or when the state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Hines v. Davidowitz, 312 U.S. 52, 67 (1941). See also Fidelity Federal Savings & Loan Assn., supra, 458 U.S., at 153.' "
MPI Acquisition, LLC v. Northcutt, 14 So.3d 126, 128 (Ala.2009) (quoting Michigan Canners & Freezers Ass'n v. Agricultural Marketing & Bargaining Bd., 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984)). There is no express preemption clause in the LHWCA regarding retaliatory-discharge claims. Further, the United States Supreme Court has determined that the language of the 1972 amendments to the LHWCA express no intent on behalf of Congress to preempt any state remedies regarding events occurring within the "twilight zone” of coverage. Sun Ship, supra.